The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

## 2018COA130

**No. 2016CA1884, People v. Gwinn — Crimes — DUI — Prior Convictions**

In this DUI case, a division of the court of appeals concludes,
as a matter of first impression, that a defendant is not entitled to
have a jury determine the existence of the prior DUI convictions
used to enhance his or her sentence from a misdemeanor to a
felony. The division further concludes that the prosecution's
burden of proving prior convictions is by a preponderance of the
evidence.

The division also affirms the trial court's orders granting a
motion to quash witness subpoenas, allowing impeachment
testimony, admitting a trial exhibit, and rejecting a tendered jury
instruction.

Court of Appeals No. 16CA1884
Jefferson County District Court No. 16CR341
Honorable Tamara S. Russel, Judge
Honorable Christopher C. Zenisek, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Can Gwinn,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Terry and Navarro, JJ., concur

Announced September 6, 2018

Cynthia H. Coffman, Attorney General, Majid Yazdi, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Nancy C. Johnson, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Michael Can Gwinn, appeals his conviction for driving while under the influence of alcohol (DUI) as a felony. He contends that the trial court erred in (1) quashing eight subpoenas for witnesses who would have testified about problems with the Intoxilyzer 9000; (2) allowing the prosecution to impeach its own witness using leading questions; (3) admitting the express consent form; (4) refusing a jury instruction; and (5) denying his right to have a jury determine the existence of his prior DUI convictions beyond a reasonable doubt. We address and reject his first four contentions, and, as a matter of first impression, we conclude that he was not entitled to have a jury determine the existence of his prior DUI convictions. Accordingly, we affirm his conviction.

## I.     Background

¶ 2     One night after work, Gwinn rear-ended another car while driving home. Officer Trae Tripp responded to the accident and spoke with Gwinn. He smelled the odor of an alcoholic beverage on Gwinn's breath, and observed that Gwinn had bloodshot eyes and slurred speech. Gwinn admitted drinking four beers before the accident occurred. Officer Tripp requested a DUI officer, and Officer Jude Perez arrived to provide assistance.

¶ 3     Officer Perez asked Gwinn if he would complete voluntary roadside maneuvers, and Gwinn refused.  Gwinn then told Officer Perez that he drank three or four beers at a bar before the accident.  Officer Perez explained to Gwinn that if he refused to take a chemical blood or breath test to determine his blood alcohol level, then he would lose his license for one year.  Gwinn refused all tests, and Officer Perez arrested him.

¶ 4     After a jury convicted Gwinn of DUI and careless driving, the trial court, in a separate proceeding, found that Gwinn had three prior DUI convictions, adjudicated him a felony DUI offender, and sentenced him to thirty months of probation, two years of work release, and ninety days in the county jail.

## II.     No Error in Quashing Subpoenas

¶ 5     Gwinn first contends that the trial court's refusal to allow the testimony of eight current and former Colorado Department of Public Health and Environment (CDPHE) employees deprived him of his constitutional right to present a defense.  We discern no error.

### A.     Standard of Review and Applicable Law

¶ 6     A trial court's decision to exclude evidence, including witness testimony, will not be disturbed on review absent an abuse of

2

discretion.  *People v. Rodriguez*, 209 P.3d 1151, 1160-61 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010).  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law.  *Id.* at 1161.

¶ 7    All relevant evidence is admissible unless otherwise provided by constitution, statute, or rule.  CRE 402; *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002); *People v. Cordova*, 293 P.3d 114, 118 (Colo. App. 2011).  Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401; *Cordova*, 293 P.3d at 118.

¶ 8    The exclusion of evidence may, in some circumstances, implicate a defendant's Sixth Amendment right to present a defense; however, every restriction on a defendant's evidence is not constitutional error.  *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009).  Instead, "the right to present a defense is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence."  *Rodriguez*, 209 P.3d at 1160.

Thus, a defendant must prove that the evidence is both relevant and admissible. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

¶ 9     The parties dispute whether this alleged error should be reviewed for constitutional harmless error or harmless error. We need not resolve this dispute because we conclude there was no error.

## B.     Analysis

¶ 10     Knowing that the jury would be instructed that it could consider his refusal to submit to a chemical test when it determined guilt, *see* § 42-4-1301(6)(d), Gwinn sought to introduce the testimony of eight current and former employees of the CDPHE to show that the Intoxilyzer 9000 breath test machine did not satisfy the requirements of section 42-4-1301.1(2)(a), C.R.S. 2017, and, thus, did not produce an accurate result. Gwinn's counsel argued that the jury should be permitted to infer from this testimony that Gwinn's refusal was supported by the absence of a competent

intoxilyzer machine. The CDPHE moved to quash the witnesses' subpoenas.

¶ 11    The trial court asked defense counsel whether Gwinn knew of the intoxilyzer's alleged deficiencies or whether any other witness could establish that Gwinn knew of them. Counsel said she did not believe that was required since the prosecution could argue the negative inference based on no evidence. When pressed, counsel stated that she did not have any witnesses to establish Gwinn's knowledge of the intoxilyzer's purported deficiencies. The trial court granted the motion to quash finding that the testimony was irrelevant to Gwinn's refusal because it failed to establish Gwinn's knowledge of the Intoxilyzer 9000's alleged deficiencies at the time he refused to submit to chemical testing.

¶ 12    We discern no abuse of discretion in the trial court's ruling. First, because Gwinn refused chemical testing and never actually blew into the Intoxilyzer 9000, the machine's operability and accuracy were irrelevant. *See Long v. Colo. Dep't of Revenue*, 2012 COA 130, ¶ 31 (when a breath test is refused, the operability of the breathalyzer is not at issue). And while the DUI statute allows a defendant to challenge the accuracy of a particular test, it only

applies when the defendant actually submits to the test and questions its accuracy. § 42-4-1301(6)(c)(II), C.R.S. 2017; *see also Long*, ¶ 31 ("Once plaintiff refused to take the breath test after the deputy informed him that the breathalyzer was functioning properly, the operability of the breathalyzer was not at issue.").

¶ 13    Second, Gwinn failed to show that his reason for refusing to take a chemical test was related to his knowledge of problems with the Intoxilyzer 9000. Without this evidence, testimony about the intoxilyzer's deficiencies did not make the negative inference from his refusal more or less probable. CRE 401. Indeed, such testimony could only be probative if Gwinn knew of the intoxilyzer's alleged deficiencies and if this knowledge caused his refusal. Absent evidence of this knowledge, the jury could only speculate about the importance of the machine's operability in relation to the evidence presented. *Cf. People v. Salazar*, 2012 CO 20, ¶ 17 (noting that evidence "which has only the most minimal probative value, and which requires a jury to engage in undue speculation as to the probative value of that evidence" can be excluded (quoting *People v. Welsh*, 80 P.3d 296, 307 (Colo. 2003))).

¶ 14    Gwinn also contends that the trial court's ruling violated his Fifth Amendment right to remain silent. We disagree. The trial court stated:

> [U]nless Mr. Gwinn takes the stand and testifies that he knew about the problems that you've just mentioned, . . . if he takes the stand and says [that he] knew about all of those problems with the Intoxilyzer, and, therefore, [he] refused to take the breath test, it might be relevant. However, otherwise it's absolutely not relevant. . . .
>
> I will not allow your client to testify about not taking the intoxilyzer unless he has a good faith basis to state on the record that he knew about all of these problems and that's one of the reasons he didn't take it. Or if you have some other witness who is going to testify that Mr. Gwinn knew about this.

Contrary to Gwinn's assertion, the court simply explained to counsel the various avenues through which Gwinn's knowledge could be established that would then make the evidence relevant for admission: e.g., through Gwinn's own testimony or from a friend or family member who could establish that Gwinn knew of the intoxilyzer's alleged deficiencies. Thus, while Gwinn's testimony was one method of establishing knowledge and thereby relevance, it was not his only option.

¶ 15    Because the accuracy of the Intoxilyzer 9000 was not relevant, the court did not deprive Gwinn of his right to present a defense. *See id.* (explaining that the right to present a defense is limited to relevant and admissible evidence).

### III.    Prosecutor's Impeachment Was Proper

¶ 16    Gwinn next contends that the trial court erroneously permitted the prosecutor to lead a friendly witness, Officer Perez, "under the guise of impeachment" where no impeachment occurred. We disagree.

### A.    Standard of Review and Preservation

¶ 17    A trial court's ruling on evidentiary issues is reviewed for an abuse of discretion and will be upheld unless it is manifestly arbitrary, unreasonable, or unfair, or contrary to law. *See Kinney v. People*, 187 P.3d 548, 558 (Colo. 2008).

¶ 18    The Attorney General contends that Gwinn did not preserve his challenge based on improper leading questions and impeachment and that our review should be for plain error. We need not decide preservation because we conclude no error occurred.

## B.    Additional Facts

¶ 19     While questioning Officer Perez, the prosecutor asked, "Did you observe anything specific about Mr. Gwinn's speech?"  Officer Perez responded, "Other than himself being polite and things like that, it seemed overall normal."  The prosecutor then questioned Officer Perez about a sobriety examination form that he completed during the booking process.  Gwinn's counsel objected, saying there was "no reason to review [the form] unless the officer says that he cannot remember and then only for that purpose."  The prosecutor said she was impeaching Officer Perez and the trial court overruled the objection.

¶ 20     The following colloquy then occurred:

> Q: Officer Perez, do you recall that the defendant had mumbled spe[ech] when you spoke to him?
>
> A: Yes.
>
> Q: You took a look at the sobriety examination record.  Why do you fill that out?
>
> A: For our recollection.  There is a series of questions on here that are relevant to indicia of intoxication.
>
> . . . .

9

Q: Do you recall the defendant saying I am familiar with the law, I made my bed, I'll sleep in it?

A: Yes.

Q: Did you write that in quotations in your record?

A: I did.

Q: What do quotations in the report mean?

A: A specific statement by someone in my report.

### C.    Analysis

¶ 21    The conduct of the trial is within the trial court's discretion. *See Maloney v. Brassfield*, 251 P.3d 1097, 1101 (Colo. App. 2010). CRE 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him.  Leading questions may be used for the purpose of attacking such credibility."  Moreover, leading questions are proper during direct examination "as may be necessary to develop" witness testimony. CRE 611(c); *see also People v. Raehal*, 971 P.2d 256, 258 (Colo. App. 1998).

¶ 22    Because Officer Perez's direct testimony that Gwinn's speech "sounded normal" was contradicted by his previous statement in

the sobriety examination report that Gwinn's speech was "mumbled," we conclude that no error occurred when the trial court allowed impeachment with leading questions about a prior statement. *See Babcock v. People*, 13 Colo. 515, 520, 22 P. 817, 819 (1889) ("Where a party is really taken by surprise at the conduct of his own witness, it is in the discretion, and is often the duty, of the trial court to allow a party to put leading questions to his own witness . . . ."); *see also People v. Gillis*, 883 P.2d 554, 561 (Colo. App. 1994) ("[A] trial court is vested with substantial discretion in determining whether leading questions are permissible."). The two leading questions were direct references to the sobriety examination record and were asked in response to an inconsistent statement by Officer Perez — that Gwinn's speech was normal. *Cf. People v. Stewart*, 2017 COA 99, ¶ 11 (concluding the trial court erred in allowing the prosecutor to lead a witness where there was no lack of recollection, no writing introduced, and no foundation for impeachment was laid). Therefore, no error occurred in the questioning.

## IV. Exhibit 1 Properly Admitted

¶ 23    Gwinn next contends that the trial court erroneously admitted People's Exhibit 1, an express consent affidavit and notice of revocation form,[1] under CRE 403, arguing that it misled the jury and was "distracting." We discern no error.

### A. Standard of Review and Reversal

¶ 24    A trial court's ruling on evidentiary issues is reviewed for an abuse of discretion and will be upheld unless it is manifestly arbitrary, unreasonable, or unfair, or contrary to law. *See Kinney*, 187 P.3d at 558.

¶ 25    Evidence is relevant if it has any tendency to make the existence of a fact more or less probable. CRE 401. Relevant evidence is admissible, CRE 402, but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or if its admission would mislead the jury. CRE 403;

---

[1] Exhibit 1 is not part of the appellate record. Although Gwinn's opening brief argues that the improper impeachment and Exhibit 1 issues are connected, the impeachment issue concerned the sobriety examination form, while Exhibit 1 is the express consent affidavit and notice of revocation form.

*People v. Greenlee*, 200 P.3d 363, 366 (Colo. 2009); *People v. Nuanez*, 973 P.2d 1260, 1262-63 (Colo. 1999).

¶ 26    Because Gwinn argues for the first time on appeal that the court erroneously admitted Exhibit 1 under CRE 403, we review this contention for plain error. *People v. Ujaama*, 2012 COA 36, ¶ 37 (noting that issues are unpreserved when the grounds raised on appeal are different from those raised below). Plain error is (1) an error, (2) that is obvious, and (3) that causes serious doubt about the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14.

### B.    Additional Facts

¶ 27    During direct examination, the prosecutor showed Officer Perez Exhibit 1 and sought its admission in the following colloquy:

> Q: And is that a copy of the form that you went over with Mr. Gwinn during booking?
>
> A: Yes.
>
> Q: Is it a fair and accurate copy of that form?
>
> A: Yes.
>
> Q: Is that a form that you keep within the normal course of business at the police department?
>
> A: It is.

> Q: Is it kept with the files or the records specific to a defendant or case number?
>
> A: Yes.

¶ 28     Gwinn made a foundation objection and argued that Officer Perez was not a records custodian and that the document was not certified.  The trial court admitted Exhibit 1 over Gwinn's objection.

### C.     Analysis

¶ 29     We discern no abuse of discretion in the court's admission of Exhibit 1 under CRE 403.  First, as noted by the Attorney General, the trial court properly admitted Exhibit 1 under CRE 803(6) (records of regularly conducted activity) — not, as asserted by Gwinn, under CRE 803(5) (recorded recollection).  And Gwinn does not challenge the court's basis for admitting the exhibit on appeal.  Rather, Gwinn now argues that Exhibit 1 "distract[ed] the jury from the potential explanation that the Defendant may have refused a [breathalyzer] test because, as explained[,] the officer did not claim to have probable cause."  However, Officer Perez testified that he reviewed the express consent affidavit with Gwinn, which made the affidavit relevant to Gwinn's knowledge of the consequences of his refusal to take a chemical test.  Because Gwinn does not further

14

explain how this "distracted" or "misled" the jury, we reject his contention. *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) ("We decline to consider a bald legal proposition presented without argument or development . . . ."). For the same reason, we decline to address Gwinn's conclusory assertion that Officer Perez violated Colorado law by refusing to issue a required temporary permit, which Gwinn contends constituted official misconduct under section 18-8-404, C.R.S. 2017, and section 18-8-405, C.R.S. 2017. Accordingly, we discern no error, let alone plain error, in the trial court's decision to admit Exhibit 1.

V.  The Court Properly Rejected the Tendered Jury Instruction

¶ 30    Gwinn contends that the trial court erroneously rejected a tendered instruction informing the jury that law enforcement may obtain a search warrant to compel a defendant to submit to a blood test and instructing the jury that it was permitted to draw an inference from an officer's failure to employ this procedure that the officer did not believe there was evidence to support a search warrant. We disagree.

## A.      Standard of Review and Law

¶ 31      Trial courts have a duty to correctly instruct the jury on all pertinent matters of law. *People v. Garcia*, 28 P.3d 340, 343 (Colo. 2001). We review de novo whether jury instructions accurately reflect the law. *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). Generally, instructions that accurately track the language of applicable statutes and pattern instructions are sufficient. *People v. Gallegos*, 260 P.3d 15, 26 (Colo. App. 2010). However, whether to give a particular instruction lies within the trial court's discretion, and we will not disturb the court's ruling absent a showing that the court abused its discretion in rejecting a particular instruction. *Bedor v. Johnson*, 2013 CO 4, ¶ 8. A court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Banning v. Prester*, 2012 COA 215, ¶ 9.

## B.      Analysis

¶ 32      During Officer Perez's cross-examination, defense counsel asked whether the officer could have obtained a search warrant to "seize" Gwinn's blood for testing. Officer Perez said he could have, but explained that this was not usually done in DUI cases. Counsel

16

asked whether probable cause to believe a DUI had occurred would be required to obtain a warrant, and Officer Perez confirmed that it would. He also said he took no steps to obtain a search warrant when Gwinn refused testing.

¶ 33    Gwinn tendered the following instruction and argued that it accurately stated the law set forth in section 13-14-103(c), C.R.S. 2017, and Crim. P. 41(c)(3).

> The Court instructs you that Colorado law requires that in each judicial district, a judge be available, 24 hours a day seven days a week, to pass upon electronic or telephonic search or arrest warrant applications. This procedure permits judges to receive electronically the sworn affidavits of law enforcement officers, to determine the existence of probable cause, and issue the appropriate warrants.
>
> This procedure would be available to any law enforcement officer who believed they had probable cause to believe that an individual was operating a motor vehicle while impaired, or under the influence of of [sic] alcohol or drugs, and who could establish that evidence of that crime could be gathered by the issuance of a search warrant. Search warrants can authorize, without the consent of a defendant, the drawing of the defendant's blood for testing.
>
> You are permitted, but not required, to draw an inference from a police officer's failure or

> refusal to collect evidence, that the officer believed that such evidence would not support the actions he was otherwise taking.

¶ 34    Defense counsel admitted that this was not a stock Colorado jury instruction and that she was unaware of any case law to support it.[2]

¶ 35    The trial court denied the tendered instruction, finding that it "risks the Court weighing into the evidence and commenting and providing inferences to the jury." It found that this was an appropriate subject for argument by counsel.

¶ 36    Gwinn now asserts that the absence of this instruction precluded him from arguing the inference stated in it. We are not persuaded for several reasons. First, as the trial court found, the tendered instruction unduly highlighted one piece of evidence: the officer's ability to discretionarily seek a search warrant for a blood draw. The court, therefore, did not err in rejecting the instruction

---

[2] In the trial court, the *prosecutor* characterized the tendered instruction as a "theory of the case" instruction; however, Gwinn never made this argument, and the trial court made no findings under that body of law. On appeal, Gwinn cites to *People v. Jones*, 675 P.2d 9 (Colo. 1984), as "instructive," but, again, does not characterize the instruction as a theory of the case instruction or discuss the related case law. Therefore, neither do we.

on this basis alone. *See Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009) (explaining that "we disfavor instructions emphasizing specific evidence" because they "confuse the jury and result in incorrect directives regarding evidentiary weight"); *People v. Nerud,* 2015 COA 27, ¶ 43 (jury instructions that emphasize specific evidence are disfavored); *cf. People v. Omwanda,* 2014 COA 128, ¶ 42 ("The contested portion simply highlighted one piece of evidence: that other people had access to defendant's phone.").

¶ 37     Second, the instruction contains argument — that the jury could infer that Officer Perez did not have probable cause to believe that Gwinn was driving while impaired. *See People v. Merklin*, 80 P.3d 921, 927 (Colo. App. 2003) ("[A] trial court may refuse an instruction if it is argumentative, unduly emphasizes particular evidence, or contains statements not supported by the evidence.").

¶ 38     Finally, because Officer Perez testified that he could have sought a search warrant for a blood draw and did not usually do so in these types of cases, we necessarily reject Gwinn's argument that he was precluded from arguing the instruction's inference in closing argument. Moreover, he does not explain how he was precluded from doing so. *See People v. Trujillo*, 2018 COA 12, ¶ 9 ("[T]he trial

court permitted defense counsel to argue the issues raised in the instructions during closing argument."). Accordingly, we find no abuse of discretion and affirm the court's ruling.

## VI. Felony DUI Determination

¶ 39 Gwinn last contends that his prior DUI convictions trial, conducted by the trial court (as authorized by section 42-4-1301(1)(a) and (j)), violated his federal constitutional right to a jury trial.[3] We disagree and conclude that, similar to habitual criminal findings, prior DUI convictions constitute sentence enhancers that do not require a jury finding, rather than elements of the crime that do.

### A. Additional Facts

¶ 40 The prosecutor charged Gwinn with DUI as a class 4 felony, alleging that he had three prior convictions for DUI, DUI per se, or DWAI under section 42-4-1301(1)(a) and (j). Gwinn's counsel argued that because his prior DUI's were misdemeanors, and

---

[3] Gwinn asserted an equal protection challenge to the statute in the trial court, but he did not reassert that challenge on appeal. Accordingly, we deem it waived. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) ("Our starting point is the basic principle of appellate jurisprudence that arguments not advanced on appeal are generally deemed waived.").

because identity was an issue, the prosecution was required to prove them to a jury beyond a reasonable doubt.

¶ 41     The trial court rejected this argument and instead applied *People v. Schreiber,* which held that prior convictions are sentence enhancers, not elements.  226 P.3d 1221, 1223 (Colo. App. 2009). The court admitted and considered copies of certified sentencing orders for each prior conviction and a Department of Motor Vehicles (DMV) record for each prior conviction that included a photograph of Gwinn, his full name, his birthdate, and the conviction recognized by the DMV.  The court found that the prosecution met its burden and convicted Gwinn of felony DUI.

## B.     Legal Discussion

¶ 42     We review de novo a trial court's determination that a statutory provision is a sentence enhancer rather than an element of the offense.  *Lopez v. People*, 113 P.3d 713, 720 (Colo. 2005).

¶ 43     State legislatures have plenary authority to define the elements of a crime; therefore, we look to the plain language of the statute to decide whether the prior convictions are elements or sentence enhancers.  *Vega v. People*, 893 P.2d 107, 112 (Colo. 1995); *People v. Low*, 732 P.2d 622, 627 (Colo. 1987).  If the

21

legislative intent is clear from the plain language of the statute, our analysis is complete.  *People v. Vigil*, 2013 COA 102, ¶ 13.

¶ 44    A statutory provision is a sentence enhancer when the defendant may be convicted of the underlying offense without any proof of the prior conviction.  *People v. Whitley*, 998 P.2d 31, 33 (Colo. App. 1999); *see also Vega*, 893 P.2d at 112; *Armintrout v. People*, 864 P.2d 576, 580 (Colo. 1993); *Schreiber*, 226 P.3d at 1223.  Linking the severity of punishment to the presence or absence of an identified fact does not automatically make that fact an element.  *Almendarez-Torres v. United States*, 523 U.S. 224, 242 (1998).

¶ 45    Generally, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  "Although there is some doubt about the continued vitality of the prior conviction exception," *Lopez*, 113 P.3d at 723, the United States Supreme Court and the Colorado Supreme Court have repeatedly affirmed this exception, *see United States v. Booker*, 543

22

U.S. 220, 224 (2005); *Blakely*, 542 U.S. at 301; *People v. Huber*, 139 P.3d 628, 631 (Colo. 2006); *Lopez*, 113 P.3d at 723.

¶ 46 Moreover, *Apprendi*'s prior conviction exception extends to the additional statutory factual findings for each conviction necessary to support an enhanced sentence, including (1) that each prior conviction was separately brought and tried; (2) that each prior conviction arose out of separate and distinct criminal episodes; and (3) that the accused was the person named in each prior conviction. *Lopez*, 113 P.3d at 726; *People v. Parks*, 2015 COA 158, ¶¶ 28-29; *People v. Conyac*, 2014 COA 8M, ¶ 167; *People v. Poindexter*, 2013 COA 93, ¶¶ 72-73 (rejecting contention that habitual sentence must be vacated because it was based on facts found by a judge rather than a jury); *People v. LaPage*, 397 P.3d 1074, 1082-83 (Colo. App. 2011) ("There is no right to a jury determination of habitual criminal charges."), *aff'd on other grounds*, 2014 CO 13; *People v. Moore*, 226 P.3d 1076, 1089-90 (Colo. App. 2009) (rejecting the defendant's claim that his Sixth Amendment right to a jury trial was violated because a judge, rather than a jury, determined the habitual criminal counts); *People v. Nunn*, 148 P.3d 222, 226-28 (Colo. App. 2006) (habitual criminality may be constitutionally

adjudicated by a judge and not a jury); *People v. Felder*, 129 P.3d 1072, 1074 (Colo. App. 2005) (rejecting the defendant's argument that under *Apprendi* and *Blakely* his habitual criminality should have been pleaded and proved to a jury); *People v. Flowers*, 128 P.3d 285, 289 (Colo. App. 2005) (noting that *Apprendi* does not require a jury to determine whether a defendant's prior convictions were separately brought and tried); *People v. Benzor*, 100 P.3d 542, 545 (Colo. App. 2004); *People v. Carrasco*, 85 P.3d 580, 582 (Colo. App. 2003).

## C. Analysis

¶ 47    Section 42-4-1301(1)(a) provides in relevant part as follows:

> Driving under the influence is a misdemeanor, but it is a class 4 felony if the violation occurred after three or more prior convictions, arising out of separate and distinct criminal episodes, for DUI, DUI per se, or DWAI . . . or any combination thereof.

¶ 48    Section 42-4-1301(1)(j) provides in relevant part as follows:

> For the purposes of this section, a person is deemed to have a prior conviction for DUI, DUI per se or DWAI; . . . if the person has been convicted under the laws of this state or under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of an act that, if committed within this state, would constitute any of these

> offenses. The prosecution shall set forth such prior convictions in the indictment or information.

¶ 49    The plain language of the statute convinces us that the General Assembly intended prior DUI convictions to constitute a sentence enhancer rather than an element of DUI. Section 42-4-1301(1)(a) makes it unlawful for a person to "drive[] a motor vehicle or vehicle under the influence of alcohol or one or more drugs, or a combination of both alcohol and one or more drugs." These are the only elements necessary to convict Gwinn of DUI. The fact of his prior convictions served only to determine the severity of his punishment. *See Schreiber*, 226 P.3d at 1223 (concluding that an enhancement from a misdemeanor was not an element "because: (1) a defendant may be convicted of the underlying offense without any proof regarding the sentence enhancer; and (2) the sentence enhancement provision only increases the potential punishment").

¶ 50    To the extent that Gwinn claims the burden of proof should have been beyond a reasonable doubt, rather than a preponderance of the evidence, we are not persuaded. Unlike the habitual criminal statute, section 18-1.3-803(4)(b), C.R.S. 2017, which clearly states that the "prosecuting attorney has the burden of proving beyond a

reasonable doubt that the defendant has been previously convicted as alleged," the DUI statute contains no such requirement. Similarly, unlike crime of violence counts, which must be submitted to the jury (§ 18-1.3-406(4), C.R.S. 2017) and proven beyond a reasonable doubt (*People v. Russo*, 713 P.2d 356, 364 (Colo. 1986)), the DUI statute does not require that prior convictions be submitted to a jury. We may not add language to a statute that does not exist. *See People v. Diaz*, 2015 CO 28, ¶ 12 ("We do not add words to the statute or subtract words from it." (quoting *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007))).

¶ 51    Moreover, when a sentencing statute does not establish a burden of proof, a court may properly apply the preponderance of the evidence standard. *See People v. Wilson*, 2013 COA 75, ¶ 58 (finding prior drug felony used to enhance sentence properly proved by a preponderance of the evidence); *Schreiber*, 226 P.3d at 1224 (where a statute does not establish a burden of proof, preponderance of the evidence determined by a judge is proper); *see also People v. Lacey*, 723 P.2d 111, 124 (Colo. 1986) (prosecution required to prove the defendant was on probation by a preponderance of the evidence standard at revocation hearing).

¶ 52    We acknowledge that the consequences of transforming a misdemeanor offense into a felony offense involve more than simply increasing the punishment and that critical constitutional and statutory protections attend felony charges. *See Vigil*, ¶ 27 (citing *Schreiber*, 226 P.3d at 1225 (Bernard, J. dissenting)). Indeed, article II, section 23 of the Colorado Constitution provides "a right to a jury of twelve in criminal cases in courts of record that cannot be circumscribed by the General Assembly or any rule of procedure." *Id.* at ¶ 28 (quoting *People v. Rodriguez*, 112 P.3d 693, 699 (Colo. 2005)). And our supreme court has interpreted this provision to require a jury of twelve in felony cases, as opposed to the jury of six a defendant receives in a misdemeanor case. *See* § 18-1-406(1), C.R.S. 2017; Crim. P. 23(a)(1)(2); *see also Rodriguez*, 112 P.3d at 703 (right to twelve jurors does not extend to misdemeanor cases).

¶ 53    But this case is not like *Vigil*, where the defendant received no constitutional or procedural protections but instead, was charged, tried, and convicted of a misdemeanor in county court and then sentenced for a felony in county court based on his prior misdemeanor convictions. Rather, section 42-4-1301 requires the

27

prosecution to bring a felony DUI charge in an "indictment or information," and to identify the prior DUI convictions that make it a felony. *See* § 42-4-1301(1)(j), C.R.S. 2017; *see also* § 16-5-101, C.R.S. 2017 (describing how felony charges are brought by indictment, information in district court and felony complaint). Consequently, the DUI prosecution occurs in the district court where felony protections exist. And the record here demonstrates that (1) the prosecution charged Gwinn by felony complaint and information; (2) the case proceeded in the district court; and (3) a jury of twelve persons convicted him of DUI.

¶ 54 Finally, we note that courts in other jurisdictions with felony DUI statutes have consistently applied the holdings of *Apprendi* and *Almendarez-Torres* to find that prior convictions need not be submitted to a jury or be proved beyond a reasonable doubt. *See State v. Palmer*, 189 P.3d 69, 75-76 (Utah Ct. App. 2008) (collecting cases).

¶ 55 To the extent Gwinn claims the prosecution failed to plead the prior convictions in the charging document, we reject that contention because the only charging document in the appellate record charges DUI as a class 4 felony. We note that the document

28

in the record is obscured and less than clear. However, the burden rests with the appellant to provide a complete appellate record, and we must presume the correctness of documents discussed by the court but not before us. *See People v. Ullery*, 984 P.2d 586, 591 (Colo. 1999) (explaining that an appealing party must provide a complete record, without which we presume the correctness of the trial court's proceedings); *People in the Interest of A.W.*, 2015 COA 144M, ¶ 18 (same).

¶ 56　　Because we agree with the reasoning of the cases cited above, and because we are bound by our supreme court's recognition of the prior conviction exception, we perceive no error in the trial court's adjudication of Gwinn as a felony DUI offender and affirm his conviction.

## VII.　Conclusion

¶ 57　　The judgment is affirmed.

JUDGE TERRY and JUDGE NAVARRO concur.