19CA2267 Peo v Eugene 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 19CA2267
Arapahoe County District Court No. 18CR1224
Honorable Ben L. Leutwyler III, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Terrence Kenneth Eugene,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE PAWAR
Kuhn and Bernard*, JJ., concur

Prior Opinion Announced September 1, 2022, Reversed in 22SC952

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily Hessler, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Terrence Kenneth Eugene, was convicted of second and third degree assault arising out of a road rage incident.  He appealed to this court, challenging the trial court's failure to suppress at least part of his interrogation by police, among other things.  Two members of this division agreed with his suppression argument and reversed without addressing his additional appellate arguments.  *People v. Eugene*, 2022 COA 99, ¶ 6, *rev'd*, 2024 CO 59.  The supreme court granted certiorari and reversed that opinion, holding that the entire interrogation was properly admitted.  *People v. Eugene*, 2024 CO 59, ¶ 1.  It then remanded the case to us to consider Eugene's remaining appellate arguments.  *Id.* at ¶ 28.  We do so now, affirming the judgment of conviction and remanding to merge the convictions and correct the mittimus.

## I.    Background

¶ 2     Eugene was driving with his wife and got into a road rage incident with two men in another vehicle.  Eventually, all four individuals got out of their respective vehicles, and Eugene had a physical altercation with the other driver.  There was conflicting evidence about who initiated the physical fight.  Both men

sustained injuries, though the other driver's injuries were more severe, including cuts to his face and back.

¶ 3     Eugene was charged with two counts of second degree assault. The jury found him guilty of one count of second degree assault and one count of third degree assault, both of which required the jury to find that he caused the other driver serious bodily injury.

¶ 4     On remand from the supreme court, the remaining arguments we must consider are Eugene's contentions that the trial court erred by (1) admitting expert testimony about whether the victim's injuries constituted serious bodily injury; (2) allowing the prosecutor to engage in misconduct during closing argument; (3) failing to give defense-tendered jury instructions; and (4) failing to merge the assault convictions. We conclude that only the last of these arguments warrants relief.

## II.     Expert Testimony

¶ 5     Eugene argues that a medical expert improperly opined on whether a legal standard had been met by testifying that the victim suffered serious bodily injury. We review evidentiary rulings like this one for an abuse of discretion. *See Campbell v. People*, 2019 CO 66, ¶ 21. Because this alleged error is unpreserved, we will

reverse only if any error is plain. *See Hagos v. People*, 2012 CO 63,
¶ 14. Plain error must be both obvious and substantial, meaning
that it so undermined the fundamental fairness of the trial that it
cast serious doubt on the reliability of the conviction. *Id.* We
perceive no plain error here.

¶ 6     An expert may provide testimony that "embraces an ultimate
issue to be decided by the trier of fact." CRE 704. But an expert
"may not usurp the function of the jury." *People v. McMinn*, 2013
COA 94, ¶ 51. Expert testimony usurps the function of the jury if
the testimony "form[s] conclusions for the jurors that they are
competent to reach on their own" by "applying the law to the facts
to reach a conclusion." *People v. Baker*, 2019 COA 165, ¶ 14, *aff'd*,
2021 CO 29.

¶ 7     Whether injuries meet the legal definition of serious bodily
injury is a question of fact for the jury. *People v. Baker*, 178 P.3d
1225, 1233 (Colo. App. 2007). Thus, an expert risks impermissibly
usurping the jury's function by testifying that a victim's injuries
satisfy the legal definition of serious bodily injury. *See People in
Interest of J.R.*, 2021 COA 81, ¶¶ 31-33 (expert usurped the

3

function of the jury by testifying that the victim suffered sexual abuse under the legal definition of that term).

¶ 8    The expert testimony at issue here came from the doctor who treated the other driver at the hospital.  On direct examination, the prosecution asked him to read the legal definition of serious bodily injury, which the doctor did.  The prosecution then asked whether the other driver's injuries satisfied that definition, and the doctor answered that they did.  The trial court also admitted a "Serious Bodily Injury Determination Form" in which the doctor affirmed the same.  Thus, the doctor testified that a required element of the charged offenses (serious bodily injury) was met.

¶ 9    We will assume without deciding that admitting the testimony was an abuse of discretion.  But even if admitting the testimony was error, it was not plain error.

¶ 10    The properly admitted testimony from the doctor included his opinion that the cut on the other driver's face had "the potential risk of permanent scarring or misalignment of the eyebrow after repair [and] ha[d] the risk of disfigurement."  The jury also saw photographs of the other driver's injuries.  Because all of this evidence was uncontroverted, the properly admitted evidence

overwhelmingly established that the other driver suffered serious bodily injury. *See* § 18-1-901(3)(p), C.R.S. 2024 (defining serious bodily injury as involving "a substantial risk of serious permanent disfigurement" or "a substantial risk of protracted loss or impairment of the function of any part or organ of the body").

¶ 11    Moreover, the main issue at trial was whether Eugene or the other driver was the initial aggressor and, therefore, whether Eugene acted in self-defense. The expert's testimony did not bear on these issues.

¶ 12    Thus, we are able to say that there was no plain error because the erroneously admitted evidence does not cause us to doubt the reliability of the conviction. *See Hagos*, ¶ 14.

## III.    Prosecutorial Misconduct

¶ 13    We evaluate allegations of prosecutorial misconduct using a two-step analysis. First, we determine whether the conduct was improper based on the totality of the circumstances. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). Second, if the conduct was improper, we determine whether the impropriety warrants reversal under the applicable standard. *Id.*

¶ 14    When evaluating propriety under the first step, we are mindful that arguments delivered during trial are not always perfectly scripted. *People v. Samson*, 2012 COA 167, ¶ 30. Accordingly, prosecutors have wide latitude in the language they choose, and we accord them "the benefit of the doubt when their remarks are ambiguous or simply inartful." *Id.*

¶ 15    The prosecutor's statement at issue here came during closing argument:

> We met [Eugene]. This is not self-defense. This is assault.
>
> Look at the credibility when you evaluate self-defense, when you evaluate who told you what.
>
> [Eugene] never mentions or claims self-defense. He admits some words.
>
> . . . .
>
> . . . He denies a weapon. He denies punching. He denies injuries. . . . [Eugene] got out of his car first. He is the initial aggressor. He never calls the police for help. He never mentions self-defense.

¶ 16    Eugene contends that this argument was improper because it (1) implied that Eugene had to say the phrase "self-defense" to invoke that defense; (2) invited the jury to penalize Eugene for

declining to testify at trial; and (3) suggested that it was Eugene's burden to prove self-defense, not the prosecution's burden to disprove it. We conclude the challenged statements did none of these things.

¶ 17    The evidence included Eugene's interrogation by police, in which he gave police his version of the events at issue. In that interrogation, Eugene did not say that he engaged in the physical fight to protect himself or his wife. The prosecutor's reference to what Eugene did and did not say was therefore a proper comment on facts in evidence and the reasonable inferences to be drawn from them. *See People v. Jamison*, 2018 COA 121, ¶ 31. And at no point did the prosecutor refer to Eugene's decision not to testify at trial or whether it was his burden to prove anything. We therefore reject Eugene's argument that the prosecutor engaged in misconduct.

## IV.    Jury Instructions

¶ 18    Eugene next argues that the trial court erred by failing to give three jury instructions he tendered related to self-defense. These are challenges to the trial court's decision about which instructions to give; they do not assert that the court incorrectly instructed the jury on the applicable law. We therefore review the trial court's

actions for an abuse of discretion. *See People v. Gwinn*, 2018 COA 130, ¶ 31, *overruled on other grounds by Linnebur v. People*, 2020 CO 79M, ¶ 8. We perceive none.

¶ 19 A defendant is entitled to a requested instruction if there is some credible evidence to support it. *See Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004). When determining whether the evidence warrants a requested instruction, we view the evidence in the light most favorable to the defendant. *Id.*

¶ 20 In general, self-defense justifies a defendant's use of physical force against an alleged victim as long as (1) the force was deployed by the defendant to defend himself or another person from what he reasonably believed was the use or imminent use of unlawful physical force by the alleged victim, and (2) the defendant used a degree of force he reasonably believed to be necessary to defend himself or the other person from the alleged victim. *See Pearson v. People*, 2022 CO 4, ¶ 22.

¶ 21 Eugene's defense at trial was that the other driver initiated the physical altercation, and whatever force he used in the fight was reasonable given that initial force and threat of force from the other

driver. Because there was some credible evidence to support this theory, the trial court gave the following self-defense instruction:

> The defendant was legally authorized to use physical force upon another person without first retreating if:
>
> 1. he used that physical force in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the other person, and
>
> 2. he used a degree of force which he reasonably believed to be necessary for that purpose, and
>
> 3. he did not, with intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that other person, and
>
> 4. he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless continued or threatened the use of unlawful physical force.

¶ 22     Eugene argues that the first two of his tendered instructions were necessary because the evidence showed that he faced a threat from multiple assailants (the other driver and his passenger), and the self-defense instruction the court gave contemplated a threat

9

from just one assailant (the other driver). We need not address the substance of those two additional instructions because we disagree that there was any evidence of a threat from the other driver's passenger. Eugene's wife testified that after Eugene and the other driver exited their vehicles, she and the passenger got out of their respective vehicles and "then we stood next to each other while [the fight] was going on." There was no evidence that the passenger did anything threatening the imminent use of unlawful force to Eugene or his wife. Indeed, the passenger's only involvement in the fight was to pull the other driver off Eugene at the end. We therefore reject Eugene's argument that he was entitled to any instructions based on evidence that there were multiple assailants.

¶ 23    Eugene also argues that he was entitled to his third tendered instruction on the lack of a duty to retreat because the given self-defense instruction did not adequately convey this principle to the jury. We disagree.

¶ 24    Eugene's tendered instruction on this aspect of self-defense read, "A person is entitled under the law to exercise his right to self-defense without attempting to retreat or flee. A person has the right to stand his ground when confronted by another who he reasonably

believes to be threatening or assaulting him." But the given self-defense instruction said as much. It said that Eugene was legally authorized to use physical force in self-defense "without first retreating." Because the tendered instruction would have been redundant, the court did not abuse its discretion by declining to give it.

## V. Merger

¶ 25 Finally, Eugene argues, and the prosecution agrees, that the trial court erred by failing to merge his second and third degree assault convictions. We also agree and conclude that although the error was unpreserved, it warrants relief.

¶ 26 Third degree assault merges with second degree assault as long as there was only a single act of assault. *See People v. Valera-Castillo*, 2021 COA 91, ¶ 52. We agree with Eugene and the prosecution that there was only a single assault here. It was therefore error not to merge the two assault convictions. This error requires a remedy regardless of whether it qualified as plain error. *See Whiteaker v. People*, 2024 CO 25, ¶ 24 ("[W]hen a defendant establishes that a trial court entered multiplicitous punishments in violation of double jeopardy principles, merger is the remedy."). We

11

therefore remand with directions to merge the convictions and correct the mittimus.

## VI.  Disposition

¶ 27 The case is remanded to the trial court with directions to correct the mittimus by merging the two assault convictions. The judgment of conviction is otherwise affirmed.

JUDGE KUHN and JUDGE BERNARD concur.