Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 7, 2019

**2019 CO 85**

**No. 18SC45, *Deleon v. People*—Self-Incrimination—Testimony—Jury Instructions.**

In this case, the supreme court concludes that by tendering a jury instruction regarding a defendant's right to remain silent, Deleon preserved the issue for appeal of whether the trial court erred in failing to give any instruction regarding a defendant's right to remain silent.  Next, the court concludes that the trial court here failed to provide an effective jury instruction regarding Deleon's right to remain silent, which was an error.  Finally, the court concludes that the error was not harmless beyond a reasonable doubt.

Accordingly, the judgment of the court of appeals is reversed.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 85

### Supreme Court Case No. 18SC45
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1920

### Petitioner:

Julian Anastacio Deleon,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Reversed
*en banc*
October 7, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Mark Evans, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
William G. Kozeliski, Assistant Attorney General
*Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.
**JUSTICE SAMOUR** dissents.

¶1 Julian Deleon was charged with two counts of sexual assault on a child. During his trial, Deleon exercised his Fifth Amendment right against self-incrimination and elected not to testify. At the jury instruction conference prior to closing arguments, Deleon tendered an instruction regarding a defendant's right to remain silent, which the trial court denied because it did not match the pattern instruction. Instead, the court indicated that it would give that pattern instruction. But at the close of evidence, the trial court never instructed the jury regarding Deleon's right to remain silent either verbally or in writing. Deleon argues that this constituted reversible error.[1] Under the facts of this case, we agree.

¶2 We first conclude that, by tendering a jury instruction regarding a defendant's right to remain silent, Deleon preserved the issue for appeal of whether the trial court erred in failing to give such an instruction. Next, we conclude that the trial court erred by failing to provide an effective jury instruction

---

[1] We granted certiorari to review the following issues:

1.  Whether a trial court's introductory comments to unsworn venire members fulfill the constitutional requirement for jurors to be instructed, in an effective manner, that a defendant has the right to not testify and no adverse inference can be drawn from his decision to not testify.

2.  Whether appellate courts review a trial court's failure to give a jury instruction, tendered and repeatedly requested by a litigant, for plain error.

regarding a defendant's right to remain silent. Finally, we conclude that the error was not harmless beyond a reasonable doubt. Therefore, we reverse the judgment of the court of appeals.

## I. Facts and Procedural History

¶3 Deleon was charged with two counts of sexual assault on a child for acts involving his girlfriend's nine-year-old daughter. Deleon's defense was that the victim fabricated the allegation.

¶4 During voir dire, the trial court told the prospective jurors that Deleon "has no obligation to present any evidence or testimony at all. [He] does not have to testify. And if he chooses not to testify, you cannot hold it against him in any way that he did not." After the jurors had been selected and sworn, the trial court told them that Deleon was not obligated to offer any evidence, and that "[t]he law never imposes on the Defendant in a criminal case the burden of calling any witnesses or introducing any evidence." Then, before opening statements, the trial court indicated to the jury that it would receive further instructions later in the trial.

¶5 During trial, the victim testified that Deleon had sexually assaulted her. Because the alleged assaults were remote in time, however, there was no physical evidence introduced into evidence. Deleon exercised his Fifth Amendment right against self-incrimination and chose not to testify.

3

¶6　After the evidence was completed, the trial court held a jury instruction conference. At that time, Deleon tendered a proposed instruction to the trial court regarding his right not to testify which explained that the jury could not consider him exercising that right in reaching its verdict[2]:

> Every defendant has an absolute constitutional right not to testify. I remind you that the prosecution must prove the defendant's guilt beyond a reasonable doubt. The defendant does not have to prove anything. Do not consider, for any reason at all, that the defendant did not testify. Do not discuss it during your deliberations or let it influence your decisions in any way.

¶7　The trial court denied Deleon's proposed no-adverse-inference instruction, stating that "the better way to go would be to follow the pattern [jury] instructions" that the Colorado Supreme Court had approved at the time.[3] Yet despite expressing this preference, the court never issued a no-adverse-inference instruction. When the trial court read the final instructions to the jury and provided it written copies, neither party objected to the absence of the pattern no-adverse-inference instruction. The jury ultimately found Deleon guilty as charged.

---

[2] We refer to such an instruction as a no-adverse-inference instruction.

[3] Although it is unclear from the record which pattern instruction the judge was referring to, it appears that he meant the 1983 Colorado Criminal Jury Instructions, which state that: "The defendant is never compelled to testify, and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way." CJI-Crim. 3:07 (1983).

¶8 On appeal, Deleon argued that, under *Carter v. Kentucky*, 450 U.S. 288 (1981), the trial court violated his Fifth Amendment right against self-incrimination by failing to give the jury his tendered instruction on his right not to testify. The court of appeals viewed this argument as presenting two distinct issues: whether the trial court abused its discretion in rejecting Deleon's tendered instruction; and whether the trial court reversibly erred by failing to provide any no-adverse-inference jury instruction? *People v. Deleon*, 2017 COA 140, ¶ 11, __ P.3d __. The court of appeals issued a split opinion affirming Deleon's conviction.

¶9 As to the first issue, the court of appeals unanimously concluded that the trial court had intended to give the pattern instruction—but had inadvertently failed to do so—and that this instruction would have effectively conveyed Deleon's request for a no-adverse-inference jury instruction. *Id.* at ¶¶ 15–17. Thus, it concluded that there was no error in rejecting Deleon's proffered instruction in favor of the pattern instruction. *Id.* at ¶ 16.

¶10 As to the second issue, the court of appeals unanimously concluded that Deleon failed to preserve that issue because he did not object to the omission of the no-adverse-inference jury instruction. *Id.* at ¶ 18. In so doing, it concluded that plain error was the appropriate standard for review. *Id.* at ¶ 20.

¶11 Finally, the majority concluded that there was no error because the trial court had met its constitutional requirement to provide an effective no-adverse-

5

inference jury instruction based on the trial court's introductory comments regarding Deleon's right not to testify. *Id.* at ¶¶ 22–23.

¶12 Judge Welling dissented from the majority's conclusion that the trial court provided the jury with an effective no-adverse-inference jury instruction. Specifically, Judge Welling concluded that the trial court's introductory comments were not effective because they were too far removed from the jury's deliberations and that failure constituted plain error. *Id.* at ¶¶ 62–68 (Welling, J., dissenting).

¶13 We granted certiorari and now reverse.

## II. Analysis

¶14 This case requires us to answer three related questions. First, did Deleon's tendered no-adverse-inference instruction preserve the issue of whether the trial court erred in failing to provide *any* no-adverse-inference jury instruction? Although Deleon failed to object to the omission of the pattern instruction, we conclude that he preserved the issue because he tendered an instruction specifically requesting a no-adverse-inference instruction at the jury instruction conference.

¶15 Second, did the trial court's comments during voir dire and after the jury was sworn constitute an effective no-adverse-inference instruction? We conclude that they did not because they were given during the early stages of the trial process; they were made with the purpose of determining potential juror mindset;

they indicated that the jury would receive further instructions later in the trial; and when the instructions were read prior to closing arguments, the jury was told by the judge that the instructions were the law they must follow.

¶16 Third, does the trial court's failure to give an effective no-adverse-inference instruction require reversal? We hold that it does here because, under the facts of this case, the error was not harmless beyond a reasonable doubt.

## A. Law

¶17 The Fifth Amendment to the U.S. Constitution provides protections against compulsory self-incrimination, including the defendant's right not to testify against himself. Invoking this right, however, may come at a cost since jurors often "view this privilege as a shelter for wrongdoers . . . [and] assume that those who invoke it are guilty of [the] crime." *Carter*, 450 U.S. at 302 (quoting *Ullmann v. United States*, 350 U.S. 422, 426 (1956)). Thus, in order to effectuate this protection, the U.S. Supreme Court has held that a trial court must instruct the jury that it cannot consider the defendant's refusal to testify in reaching a verdict—also known as a no-adverse-inference jury instruction—when requested to do so by the defendant. *Id.* at 300, 303; *see also James v. Kentucky*, 466 U.S. 341, 350 (1984). Importantly, the right to a no-adverse-inference jury instruction can be asserted in multiple ways and is not limited to "an arid ritual of meaningless form." *James*, 466 U.S. at 349 (quoting *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958)).

7

¶18    For example, in *James*, the trial court denied the defendant's request for an "admonition" that the jury place no emphasis on his refusal to testify. 466 U.S. at 343. On appeal, the Kentucky Supreme Court held that the defendant's request for an "admonition" and not an "instruction" relieved the trial court of its obligation to give a no-adverse-inference jury instruction. *Id.* at 344. The U.S. Supreme Court reversed, concluding that the "admonition" request amounted to a request for a no-adverse-inference jury "instruction." *Id.* at 348. The Court explained that even though "instruction" and "admonition" carry different legal definitions,[4] the defendant's request for an admonition was nonetheless a plain and reasonable assertion of his Fifth Amendment right against self-incrimination. *See id.* at 345, 348–49. Thus, the Court held that the defendant was entitled to a no-adverse-inference jury instruction. *Id.* at 351–52.

¶19    While the Court has held that an effective no-adverse-inference instruction must be given if a defendant requests one, it has left the method of giving such an instruction—e.g., orally, in writing, or both—to the states. *See id.* at 350 ("The Constitution obliges the trial judge to tell the jury, in an effective manner, not to

---

[4] The Court explained that "instruction" means a statement of black letter law, whereas "admonition" means a cautionary statement regarding the jury's conduct. *James*, 466 U.S. at 345.

draw the inference if the defendant so requests; but it does not afford the defendant the right to dictate, inconsistent with state practice, how the jury is to be told."). In Colorado, we established the jury instruction "method" in the Rules of Criminal Procedure, specifically in Crim. P. 30. That rule states that the parties should tender their desired instructions to the court and, after allowing the parties an opportunity to object to the proposed instructions, the court shall read such instructions to the jury as well as provide them to the jury in writing:

> A party who desires instructions shall tender his proposed instructions to the court . . . . All instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. . . . Before argument the court shall read its instructions to the jury . . . and they shall be taken by the jury when it retires.

¶20 Accordingly, in Colorado, a trial court should oblige a request for a no-adverse-inference jury instruction by both orally instructing the jury prior to argument and delivering the instruction in writing to the jury before it retires. The failure to follow Crim. P. 30, however, does not by itself violate *Carter*. Instead, *Carter* is violated if the jury does not receive an *effective* instruction. *See Carter*, 450 U.S. at 300; *see also James*, 466 U.S. at 350.

## B. Application

¶21 Deleon tendered a no-adverse-inference jury instruction to the trial court during the jury instruction conference that was held prior to closing arguments. The trial court rejected this instruction because its language had not been

"approved" by the Colorado Supreme Court. But, as noted earlier, the trial court failed to give the jury the pattern instruction as it had indicated it would. We are therefore left to decide the appropriate standard of review, whether the trial court gave an effective no-adverse-inference jury instruction, and whether any error requires reversal.

### 1. Deleon Preserved the Issue for Review

¶22 The court of appeals concluded that although Deleon asserted his Fifth Amendment right to have the trial court instruct the jury when he tendered his no-adverse-inference instruction, he did not preserve the issue of the trial court's failure to actually instruct the jury because he failed to object to the omission of the instruction. *See Deleon*, ¶ 18. To reach its conclusion, the court of appeals relied on *United States v. Padilla*, 639 F.3d 892 (9th Cir. 2011). *Id.* In that case, the defendant requested a no-adverse-inference jury instruction prior to trial. *Padilla*, 639 F.3d at 895. The Ninth Circuit held that the defendant had failed to preserve the issue because he had failed to request a no-adverse-inference jury instruction during the trial. *See id.* Here, unlike in *Padilla*, Deleon requested a no-adverse-inference jury instruction during trial. Hence, we do not follow *Padilla*. Rather, we look to *Carter* and *James* for guidance.

¶23 Although *Carter* and *James* differ from this case because they involved a trial court expressly denying a defendant's request for a no-adverse-inference jury

10

instruction, we find them persuasive. *Carter* explained that when a criminal defendant elects not to testify and requests that the jury be instructed not to speculate as to why he did not testify, the trial judge is obligated to grant the request using "the unique power of the jury instruction." 450 U.S. at 302–03. *James* then further explained that a defendant asserts this right to a *Carter* instruction when the defendant makes a plain and reasonable assertion of the right. 466 U.S. at 349.

¶24 In this case, Deleon made a plain and reasonable assertion of his *Carter* right by tendering a proposed no-adverse-inference instruction. Undoubtedly, the trial court understood that Deleon was asserting this right when it indicated that it would instead give the pattern instruction on the same issue.[5] While we agree with the court of appeals that it would have been best practice for Deleon to have objected to the omission of the instruction in order to allow the trial court to correct the error, Deleon nevertheless made a timely assertion of his *Carter* right by tendering a proposed no-adverse-inference jury instruction during the jury

_____

[5] As the court of appeals noted, it does appear that the trial court inadvertently failed to give the no-adverse-inference instruction. That inadvertence, however, does not change our analysis.

11

instruction conference. Hence, we conclude that Deleon preserved the issue for appeal.

## 2. The Trial Court Failed to Provide an Effective No-Adverse-Inference Instruction

¶25 Because Deleon properly requested a no-adverse-inference instruction, he was entitled to have that instruction given to the jury both orally and in writing pursuant to Crim. P. 30. That did not occur, which was an error. That error alone, however, does not violate Deleon's *Carter* right. Rather, Deleon's *Carter* right was violated only if the trial court failed to give the jury an *effective* no-adverse-inference instruction.[6] The court of appeals concluded that the trial court's introductory comments regarding Deleon's right not to testify constituted an effective instruction. We conclude otherwise.

¶26 In this instance, we conclude that the trial court's initial remarks failed to constitute an effective instruction based on both their timing and their content. To be sure, the trial court did state that Deleon had "no obligation to present any evidence or testimony at all. [He] does not have to testify. And if he chooses not to testify, you cannot hold it against him in any way that he did not." But it made

---

[6] Because we ultimately reverse the court of appeals on the grounds that the trial court failed to provide an effective no-adverse-inference jury instruction, we do not address whether the trial court's failure to follow Crim. P. 30 itself constituted reversible error.

12

that comment during voir dire.[7]   That is, the purpose of the comment was to determine whether the potential jurors could act impartially and conscientiously apply the law, not to instruct the jury on the law itself.  *See People v. Davis*, 794 P.2d 159, 207 (Colo. 1990) ("The purpose of the *voir dire* was not to instruct the jurors on the law of the state but to determine whether the juror could impartially and conscientiously apply the law as laid out by the court in its instructions."), *overruled on other grounds by People v. Miller*, 113 P.3d 743 (Colo. 2005).  Moreover, Deleon requested that a no-adverse-inference instruction be given immediately prior to closing arguments, and Crim. P. 30 requires as much.  Although the timing is not dispositive, it would have been most effective for the trial court to provide an instruction at that time because "the practice of instructing the jurors immediately prior to closing arguments . . . ensur[es] that the jury hears and considers all the applicable law before deliberations and aid[s] the overall comprehension of the jury."  *People v. Baenziger*, 97 P.3d 271, 274 (Colo. App. 2004).

¶27     Additionally, the content of the trial court's statements was not definitive.

---

[7] Defense counsel discussed the burden of proof and the defendant's right to remain silent with several jurors during jury selection.  However, when tendering Jury Instruction 1 at the end of the trial, the court instructed the jury that "[w]hile lawyers may have commented during the trial on some of these rules, you are to be guided by what I say about them."

13

Before opening statements, the trial court told the jury that "[a]ll the evidence and law that you will have to decide the case *will be* presented to you . . . That evidence and the Court's instructions should be the only basis for your verdict." (Emphasis added.) Then, near the end of trial, the trial court told the jury that "[the court] will now instruct you on the law which you must apply in order to reach your verdict. . . . You must follow all of the rules as I explain them to you." Yet in its closing instructions, the court failed to inform the jury that it was not to consider Deleon's decision not to testify. In sum, the trial court told the jury that it would eventually explain the law that the jury must apply, but the court then failed to instruct the jury about the law regarding the right to remain silent.

¶28     For these reasons, we conclude that the jury never received an effective no-adverse-inference instruction. Accordingly, we now consider whether that error requires reversal.

### 3. The Trial Court's Error Was Not Harmless Beyond a Reasonable Doubt

¶29     Since the failure to give an effective no-adverse-inference instruction is of a constitutional dimension, *Carter*, 450 U.S. at 305, and Deleon preserved the issue by tendering a no-adverse-inference jury instruction, we apply constitutional harmless error review. Under this standard, an error requires reversal unless it was harmless beyond a reasonable doubt, i.e., reversal is required if "there is a reasonable possibility that the [error] might have contributed to the conviction."

14

*Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119 (quoting *Chapman v. California*, 386 U.S. 18, 23–24 (1967) (alteration in original)). In this case, there was no physical evidence against Deleon, and he did not testify, so the outcome of the case rested on the credibility of the alleged victim versus Deleon's theory that the victim fabricated the allegations. Had the trial court delivered an effective no-adverse-inference instruction, we presume that the jury would have followed it. *See Johnson v. People*, 2019 CO 17, ¶ 16, 436 P.3d 529, 533. But that did not occur; therefore, there is no guarantee that the jury refused to hold Deleon's decision not to testify against him. Indeed, jurors are prone to view an election not to testify "as a shelter for wrongdoers." *Carter*, 450 U.S. at 302 (quoting *Ullmann*, 350 U.S. at 426). Thus, there is a reasonable possibility that the trial court's error in failing to provide an effective no-adverse-inference instruction contributed to Deleon's conviction. Therefore, we cannot conclude that the failure to give a no-adverse-inference instruction was harmless beyond a reasonable doubt, meaning reversal is required.

## III. Conclusion

¶30    For the foregoing reasons, we reverse the court of appeals' judgment, and we remand the case to that court for further proceedings consistent with this opinion.

**JUSTICE SAMOUR** dissents.

JUSTICE SAMOUR, dissenting.

¶31     I agree that the trial court erred in failing to include a no-adverse-inference instruction in its final jury instructions.  But I disagree that this error requires reversal of Deleon's conviction for sexual assault on a child.  The trial court specifically provided the no-adverse-inference instruction to the jurors orally during jury selection, and it did so in the context of instructing them about the most salient legal tenets applicable in a criminal jury trial.  It subsequently gave the jury a second, comparable oral instruction.  Defense counsel highlighted the no-adverse-inference instruction multiple times, hammered it home, and made sure the prospective jurors heard it, understood it, and were willing to follow it.  Numerous prospective jurors represented that they heard the instruction, understood it, apprehended its importance and the reasons for it, and were able and willing to follow it.  And jury deliberations occurred only a day and a half later.  Under these specific circumstances, it is unreasonable to conclude that, during deliberations, the jurors forgot the instruction or that they somehow inferred it no longer applied simply because it was not repeated in writing in the final instructions.

¶32     Because the record demonstrates that the no-adverse-inference rule was effectively communicated to the jury, all constitutional requirements were

1

satisfied. *See James v. Kentucky*, 466 U.S. 341, 350 (1984); *Carter v. Kentucky*, 450 U.S. 288, 300 (1981). Therefore, I respectfully dissent.

## A. The Issue Was Not Preserved

¶33 The majority admittedly treats this case just as if defense counsel had requested a no-adverse-inference jury instruction and the court had decided not to give any version of such an instruction. Maj. op. ¶ 29. But that's not what happened here. The trial court agreed with defense counsel that a no-adverse-inference instruction was appropriate and specifically ruled that it *should and would be given* to the jury. The only disagreement was over which no-adverse-inference instruction to provide — defense counsel asked for the one they tendered, and the trial court agreed with the prosecution that the pattern instruction was preferable. The issue before us, though, is not whether the trial court correctly chose the pattern instruction over the defense's tendered instruction. Were that the issue, I'd agree with the majority that it was preserved. The claim Deleon raises is rooted in the trial court's failure to give *any* written no-adverse-inference instruction. That error occurred when the court *inadvertently failed to do that which it explicitly intended to do and repeatedly said it would do* because it forgot to include the pattern no-adverse-inference instruction in the packet of final instructions. It is that error, and no other, that landed Deleon's case on our certiorari runway.

2

¶34    Deleon's counsel did not object to the court's accidental omission. To the contrary, after the court put the packet of final instructions together, identified them as "instructions 1 through 19 and verdict forms for Count 1 and Count 2," showed them to all counsel, and inquired whether there were "any additions, corrections, or changes, or objections," the prosecution said "No, Your Honor," and defense counsel simply "reiterate[d] the defense's request" for the previously tendered instruction. The court stood by its earlier rejection of the defense's tendered instruction, repeating that "the better way" was to give "the pattern instruction[] . . . approved by the Colorado Supreme Court." Defense counsel did not alert the court to its unfortunate oversight. Had counsel done so, there is no question the court would have added the pattern no-adverse-inference instruction.

¶35    A short while later, defense counsel squandered another chance to object. Following an additional discussion, the court again asked all counsel to review the instructions to "make sure [they were] comfortable with the order [in which the instructions appeared] and with the verdict forms." Defense counsel stated that "everything look[ed] fine" with the instructions, including with respect to their "order and the verdict forms." Even as the trial court later read each instruction verbatim to the jurors, defense counsel did not speak up to apprise the court that the no-adverse-inference instruction had been left out.

¶36 The majority holds the trial court to the requirement in Crim. P. 30 that the final instructions be provided to the jury in writing. *See* Crim. P. 30 (indicating that "the court shall read its instructions to the jury . . . and they shall be taken by the jury when it retires"). But it gives the defense a pass on the rule's requirement that parties must raise any objection to the final instructions before the instructions are provided to the jury. *See id.* (indicating that the final instructions "shall be submitted to the parties, *who shall make all objections thereto before they are given to the jury*" (emphasis added)). I am concerned that today's opinion puts the instructions onus entirely on our trial court judges. I don't think that's fair. Consistent with Rule 30, attorneys share some of the responsibility regarding jury instructions, and that responsibility doesn't end when objections are made and instructions are tendered; it extends to ensuring that the final packet of instructions is accurate, complete, and consistent with the court's rulings.[1]

---

[1] Although in this case we deal with defense counsel's failure to object, the prosecution bears responsibility with respect to jury instructions too. Just last week, we held that a judgment of conviction could not stand in a case in which the prosecution obtained guilty verdicts for robbery and theft because essential elements of the two crimes logically negated each other. *See People v. Delgado*, 2019 CO 82, ¶¶ 12, 46, __ P.3d __. Inasmuch as the prosecution failed to preserve the error—such as by objecting to the jury instructions submitted—we applied the plain error standard of reversal and ultimately affirmed the court of appeals' decision to reverse the judgment of conviction and to remand for a new trial. *Id.* at ¶¶ 5, 32, 45. My position in this dissent is in line with our holding in *Delgado*.

4

¶37    I cannot join the majority in its determination that the claim of error was preserved and that constitutional harmless error review applies. Today's opinion gives defense counsel an incentive to violate Rule 30 by not reviewing the final instructions carefully or by remaining silent if they notice something is amiss. I would conclude, instead, that the claim of error was not preserved and that plain error review is thus the governing standard of reversal. *See People v. Rediger*, 2018 CO 32, ¶ 40, 416 P.3d 893, 902 (holding that plain error review controls forfeited claims of error that result from neglect, not intentional relinquishment).

## B.  There Was No Plain Error

¶38    Plain error occurs if there is (1) an error, (2) that is obvious, and (3) that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. Here, the trial court clearly erred because it failed to include the no-adverse-inference instruction in the final packet of written instructions. And, given that the court's omission violated Rule 30, I would have little difficulty concluding that the error was obvious.

---

"After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016).

¶39 But I would nevertheless hold that reversal isn't warranted because the jurors were effectively instructed regarding the no-adverse-inference rule. Hence, the error did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment.

## 1. The Trial Court's No-Adverse-Inference Oral Instruction

¶40 A mere day and a half before deliberations, the trial court specifically instructed the jurors during jury selection, in no uncertain terms, that the prosecution was the only party with a burden of proof and that Deleon did not have to testify or present any evidence, and if he elected not to testify, the jury could not use that choice against him in any way:

> You should understand that the District Attorney has the burden of proof in the case, and that is the only party with any burden of proof. The defendant has no obligation to present any evidence or testimony at all. The defendant does not have to testify. *And if he chooses not to testify, you cannot hold it against him in any way that he did not.*

(Emphasis added). Notably, this instruction was not provided in isolation; it was read as the court discussed the essential legal principles applicable in a criminal jury trial, the same ones it conveyed in writing some thirty-six hours later, immediately before closing arguments. Moreover, as I discuss next, the court subsequently gave the jury a second, analogous oral instruction, and defense counsel stressed the no-adverse-inference instruction in front of all the prospective

6

jurors, ensuring that they heard it, understood it, apprehended its importance and the reasons for it, and were able and willing to follow it.

## 2. Defense Counsel's Discussion with Prospective Juror L

¶41 When defense counsel inquired how prospective juror L made credibility determinations, she replied that she had to consider both sides of the story. Though recognizing that people may generally want to have both sides of the story in daily life, defense counsel pointed out that the law is different and emphasized that Deleon was not required to present any evidence or do anything, and if he elected not to present any evidence or do anything, the jury could not use that against him in any way:

> The law says the only person you have to hear from is this side, is these people right here [referring to the prosecutors]. They have the burden to prove beyond a reasonable doubt that any crime was committed. *The defense does not have to do anything. [Co-counsel] and I could sit back, put our heels on the table for the next four days, and do nothing, and you could in no way hold that against the defense.* So it's not about hearing both sides. It's about them [the prosecutors] proving beyond a reasonable doubt whether or not something happened.

(Emphasis added).

¶42 Prospective juror L then asked if she would hear from the witnesses, but defense counsel brought her back to the no-adverse-inference concept:

> The bigger issue is this whole idea of both sides, and that you don't necessarily get to hear from both sides. *And that if you don't hear from the defense, meaning if we wouldn't put on any witnesses, if we wouldn't put any evidence in, but rather you only hear from the Prosecution, you*

7

*cannot hold that against Mr. Deleon. You can't say, Well, I didn't hear from them, so that means he's guilty. You can't do that. That's impermissible, and the law says no way.* So what I just want to know is that even though that may not be like how you are in your daily life, probably with your kids especially if you want to hear both sides, in the courtroom, it's all on them [referring to the prosecutors].

(Emphasis added). Prospective juror L thereafter informed counsel that she could follow the no-adverse-inference instruction if selected to be on the jury.

### 3. Defense Counsel's Discussion with Prospective Juror O

¶43 Defense counsel next asked prospective juror O to share his thoughts on the no-adverse-inference rule. Prospective juror O told her that, while "it's nice to hear both sides," he "appreciate[d] the fact that the burden or responsibility" was on the prosecutors, and he was "fully comfortable with that." "It is up to them to prove [it], you know, beyond all reasonable doubt," he added.

### 4. Defense Counsel's Discussion with Prospective Juror B

¶44 Prospective juror B was similarly questioned by defense counsel about "the burden of proof," a defendant's "right not to testify," and how "it's not about weighing sides." He told counsel that he wondered whether it was even possible to prove one's innocence, so he agreed that the prosecution should have the only burden of proof and Deleon should not have to present any evidence.

8

### 5. Defense Counsel's Discussion with Prospective Juror S

¶45     When she turned her attention to prospective juror S, defense counsel again reminded all the prospective jurors that the court had provided a no-adverse-inference instruction.  She then repeated that instruction:

> I started briefly to speak with a juror about the concept of a client's right not to testify, and the Judge read you an instruction way back at the beginning of the day about [how] Mr. Deleon has the right not to testify; and if he chooses not to testify, you in no way can hold that against him.

### 6. Defense Counsel's Discussion with Prospective Juror D

¶46     While discussing why a defendant may choose not to testify, prospective juror D, an attorney, explained that "in a world in which facts cannot be established with a hundred percent certainty, with the constitutional guaranty that [the defendant in a criminal case] need not actually testify," it wouldn't be surprising if Deleon elected not to testify.  He observed, however, that, though a defense attorney certainly has the right "not to put on a case and sit back" with her "heels up on the table," it may be foolish to do so.  Defense counsel didn't disagree with that sentiment, but circled back to the no-adverse-inference instruction: "[T]he bigger idea is that everyone understands the concept that Mr. Deleon has a right not to testify, and that *if he chooses not to testify, you cannot in any way hold that against him*."  (Emphasis added).  She then asked *all the prospective jurors*: "Do any of you have an issue with that?"  No one raised his or her hand.

9

## 7. The Trial Court's Second, Comparable Oral Instruction

¶47    After the jurors were selected and sworn, the trial court informed them that it had "some further introductory instructions." The court recognized it had already provided some remarks but explained that it had additional remarks related to "procedure[s] *to be followed* in this trial:"

> Once the prosecution has called all of their witnesses and presented all of their evidence, they will rest their case. *And [Deleon] may then offer evidence, but, remember, he is not obligated to do so.* The burden is always on the prosecution to prove each and every element of the offense charged beyond a reasonable doubt.
>
> *The law never imposes on the Defendant in a criminal case the burden of calling any witnesses or introducing any evidence.*

(Emphases added).

## C. Conclusion

¶48    I agree with the court of appeals that the trial court's pertinent instructions during voir dire and shortly after the jury was selected were easy to understand, unequivocal, and directory, and thus fulfilled all constitutional requirements. Through those instructions, the court made it crystal clear to the jurors that Deleon had the right not to testify, and if he chose not to testify, they could not hold that choice against him—i.e., there could not be any negative consequences for him as a result of it. And defense counsel made sure the jurors heard the no-adverse-

inference instruction, understood it, apprehended its importance and the reasons for it, and were able and willing to follow it.

¶49     The majority places significant stock in the fact that the instructions on which I rely were not in writing and were provided during jury selection and shortly after the jurors were selected and sworn.  In doing so, it elevates form over substance.  Jurors are not as hypertechnical as lawyers and judges.  To my mind, no reasonable juror could have disregarded the judge's oral instructions simply because they were not repeated in the written instructions.[2]  The jurors were not told that the oral instructions were only relevant for the limited purpose of selecting a jury—it would have been nonsensical to tell them that, since the foremost reason for those instructions was to ensure a fair, impartial, and lawful decision during deliberations.  Nor is there a basis to believe that a reasonable juror would have concluded that the absence of the no-adverse-inference instruction in the written instructions meant that it no longer applied or that, contrary to the judge and counsel harping on it at the beginning of the trial, it was not valid or

---

[2] Of course, not every important oral instruction is required to be included in the final instructions.  For example, the instructions related to the jurors' conduct throughout the trial, juror notebooks, and juror questions were not included in the final set of instructions in this case, even though parts of all three instructions were relevant to the jury's deliberations.  Yet, we trust that the jurors nevertheless remembered and heeded those oral instructions.

11

important after all.  And because the jury deliberated only thirty-six hours later, there is no risk that they forgot the oral instructions.

¶50    In sum, while the trial court erred, reversal isn't warranted under the specific circumstances of this particular case.  Thus, I respectfully dissent.