The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 27, 2019

**2019COA175**

**No. 17CA0620, *People v. Tibbels* — Trials — Voir Dire; Criminal Law — Burden of Proof — Reasonable Doubt; Constitutional Law — Due Process**

In this criminal case, a division of the court of appeals holds that although no structural error requiring automatic reversal occurred when the trial court analogized reasonable doubt to a home's significant foundation crack during voir dire, such analogies should be avoided.  The division further concludes that neither the alleged prosecutorial misconduct nor the absence of a special interrogatory requires reversal or entry of a lower level conviction.  The judgment is affirmed.  The dissent would find structural error and reverse the defendant's convictions.

COLORADO COURT OF APPEALS                                2019COA175

Court of Appeals No. 17CA0620
Adams County District Court No. 16CR785
Honorable Robert W. Kiesnowski, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ernest Joseph Tibbels,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE FREYRE
Taubman, J., concurs
Pawar, J., dissents

Announced November 27, 2019

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith K. Rose, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     In this criminal case, we address an issue that has repeatedly arisen in prior cases but, to date, has not necessitated reversal — a trial court's use of everyday examples to explain legal concepts like reasonable doubt. Our supreme court recently held that "[a]n instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People,* 2019 CO 17, ¶ 8 (citing *Sullivan v. Louisiana,* 508 U.S. 275, 281-82 (1993)). This case presents a close question, as reflected by our split decision, and highlights the need for trial courts to discontinue this practice.

¶ 2     Defendant, Ernest Joseph Tibbels, appeals his conviction of possession of contraband. He argues that reversal is required because (1) the prosecutor improperly invited the jury to "hold him accountable" for disrupting jail operations when he was not charged with disruption; and (2) the trial court impermissibly lowered the prosecution's burden of proof by comparing reasonable doubt to a structurally significant crack in the foundation of a prospective house for purchase. Mr. Tibbels also asks us to vacate his conviction for possession of contraband as a class 4 felony and to enter a conviction for possession of contraband as a class 6 felony,

based on the court's failure to provide an interrogatory requiring the jury to find that he possessed a dangerous instrument. We address and reject each of his contentions.

## I.    Background

¶ 3    Mr. Tibbels called 911 in the midst of a mental health crisis. Police officers then arrested him based on their mistaken belief that he had violated a protection order.

¶ 4    The officers transported Mr. Tibbels to the Adams County Detention Facility. He refused to follow instructions and physically resisted the deputies' attempts to complete the booking process. Consequently, the deputies could only conduct a "cursory search" before placing Mr. Tibbels in a "quiet room" to calm down.

¶ 5    After several hours in the quiet room, Mr. Tibbels grew agitated and threatened to kill himself by tying a torn piece of his shirt around his neck. He then removed a sharpened metal spike from his pocket; struck the door with it, which caused damage, and shouted, "If you guys come in here, motherfuckers, I'll kill you." Perceiving Mr. Tibbels' actions as a threat, the deputies called for "lethal cover" and locked down the entire jail until they could subdue Mr. Tibbels, who complied with the deputies' commands.

The deputies recovered a three-inch metal spike from the cell floor and documented the damage to the door.

¶ 6     The State charged Mr. Tibbels with first degree introduction of contraband, felony menacing, and first degree possession of contraband.  During voir dire, the trial court compared the concept of reasonable doubt to a structurally significant crack in the foundation of a house being considered by a prospective purchaser.

¶ 7     During trial, the prosecution elicited testimony about how deputies responded to Mr. Tibbels by coming from their assigned posts throughout the facility.  During closing argument, the prosecutor asked the jury to hold Mr. Tibbels "accountable" for his "temper tantrum" that shut down the jail.  The jury subsequently convicted Mr. Tibbels of possession of contraband, but it acquitted him of the other two charges.

## II.     Prosecutorial Misconduct

¶ 8     Mr. Tibbels contends that the prosecutor's appeal to the jury to hold him accountable for the jail lockdown was irrelevant, prejudicial, and misled the jury.  We discern no reversible error.

## A. Additional Facts

¶ 9 The "accountability" argument first arose in opening statement when the prosecutor asked the jury to "hold [Mr. Tibbels] accountable for the situation that he create[d]. Because it was a crime." Defense counsel did not object.

¶ 10 Then, during the direct examination of a booking deputy, the prosecutor asked whether other parts of the jail were left with fewer resources because of the incident involving Mr. Tibbels. The court sustained defense counsel's relevance objection and said, "[t]hat's not what he's charged with."

¶ 11 Without objection, the prosecutor then asked two additional deputies to describe the impact of Mr. Tibbels' behavior, and they explained that the entire facility had to be locked down. A final deputy was asked whether other areas of the jail were left with fewer resources because of Mr. Tibbels' behavior, and again, defense counsel objected on relevance. This time, the court overruled the objection without further comment.

¶ 12 In rebuttal closing argument and without objection, the prosecutor argued:

And the most disturbing thing of this is that 14 deputies had to respond to this, fourteen deputies out of the 29 that were there to guard the 952 inmates. So the other 952 were left less guarded because of Mr. Tibbels'[s] actions, because of his little show, his little stunt.

And you know, I keep referring to this as a 'little show,' but it's not. It's serious. It's not like he's an actor in a play and you're the audience. No. He committed a crime. He's the defendant. It's not like he's going to come up here and take a bow. And it's not like I'm going to ask you for applause at this point, because what I'm demanding is something much more appropriate. I'm demanding accountability.

. . . .

You have all of the evidence. Hold him accountable for his actions. Find him guilty.

### B.   Standard of Review and Law

¶ 13     We review claims of prosecutorial misconduct using a two-step analysis. First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). Then, we determine whether such actions warrant reversal under the proper standard of review. *Id.*

¶ 14     If the defendant contemporaneously objected to the alleged misconduct at trial, we review for harmless error. *Id.* at 1097.

5

Whether misconduct is harmless requires a court to evaluate "the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction." *People v. Hogan*, 114 P.3d 42, 55 (Colo. App. 2004). We reverse "only if we conclude that error occurred and that there is a reasonable probability that the error contributed to the guilty verdict." *People v. Gonzales*, 2017 COA 62, ¶ 26.

¶ 15    If the defendant fails to contemporaneously object to the alleged misconduct, we review for plain error. *Wend*, 235 P.3d at 1097. Prosecutorial misconduct constitutes plain error when it was obvious and "seriously affected the fairness or integrity of the trial." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (citing *United States v. Young*, 470 U.S. 1, 15 (1985)). "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Id.* (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)).

¶ 16    Because the right to a fair trial includes the right to an impartial jury, prosecutorial misconduct that misleads a jury may warrant reversal. *Harris v. People*, 888 P.2d 259, 264 (Colo. 1995).

Indeed, prosecutors may not use arguments calculated to inflame the passions or prejudices the jury. *People v. Oliver*, 745 P.2d 222, 228 (Colo. 1987); *see, e.g.*, *People v. Conyac*, 2014 COA 8M, ¶ 147 ("Prosecutors may not pressure jurors by suggesting that guilty verdicts are necessary to do justice for a sympathetic victim."). But a prosecutor's use of rhetorical devices to argue record evidence or to respond to the defense's arguments is not misconduct. *See People v. Samson*, 2012 COA 167, ¶ 31 (prosecutors may "employ rhetorical devices and engage in oratorical embellishments"); *see also People v. Gibson*, 203 P.3d 571, 577 (Colo. App. 2008) ("[T]he prosecutor is entitled to comment on the absence of evidence to support a defendant's contentions."); *see also, e.g.*, *People v. Welsh*, 176 P.3d 781, 788 (Colo. App. 2007) (concluding the prosecutor's comment about the absence of a suicide note was "a permissible reference to the absence of evidence to support defendant's contention that she was intending to kill herself").

## C.    Analysis

¶ 17    The parties dispute preservation of the various incidents of alleged misconduct. We need not resolve this dispute, however,

because even if we assume that all alleged errors were preserved, we conclude that they are harmless and do not require reversal.

¶ 18   First, the trial court properly instructed the jury that opening statements "are not evidence.  Their purpose is just simply to kind of provide you with a roadmap with what each side thinks the evidence may show."  The court also reminded the jury that Mr. Tibbels was presumed innocent and that the government was required to prove "Mr. Tibbels guilty beyond a reasonable doubt." As well, before closing arguments, the trial court instructed the jury that it "must not be influenced by sympathy, bias or prejudice in reaching [its] decision," and that the burden of proof is on the prosecution to prove "beyond a reasonable doubt the existence of all the elements necessary to constitute the crime charged."  We presume the jury understood and followed these instructions, absent contrary evidence.  *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986); *People v. Bass*, 155 P.3d 547, 552 (Colo. App. 2006). And, Mr. Tibbels does not allege, nor has he shown, that the jury fundamentally misunderstood these instructions.

¶ 19   Second, no one disputes that defense counsel failed to object during opening statements or closing arguments.  Importantly, the

8

failure to contemporaneously object suggests that the prosecutor's comments did not appear to be overly damaging when they were made. *See People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010) ("Defense counsel's failure to object is a factor that may be considered in examining the impact of a prosecutor's argument and may 'demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.'" (quoting *People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990))).

¶ 20    Third, we are not persuaded that the jury's acquittal of Mr. Tibbels of two charges and conviction of the "least culpable offense" flowed from the prosecutor's improper accountability appeal.  Mr. Tibbels never denied being placed in the quiet room with tools in his pocket, nor did he deny striking the door with one of them.  Instead, we conclude that the verdict shows that the jury "took its role seriously and it was not improperly swayed by any potentially improper arguments."  *See People v. Larson*, 2017 CO 29, ¶ 16 (noting that "a split verdict is an indication that prejudice did not affect the jury's verdict"); *see also People v. Manyik*, 2016 COA 42, ¶ 40 (reasoning under plain error review that "the fact that the jury acquitted [the defendant] of the most serious charge . . . indicates

that the jurors based their verdict on the evidence presented and were not swayed by the prosecutor's inflammatory appeal to their sympathy for the victim).

¶ 21 Finally, the prosecution presented overwhelming evidence of guilt. Numerous deputies described Mr. Tibbels holding a "metal object that appeared to be sharpened" while inside the quiet room, and the prosecution introduced corroborating photographs and videos showing Mr. Tibbels holding the sharpened metal object inside the quiet room.

¶ 22 Accordingly, we discern no reasonable probability that the alleged misconduct by the prosecutor contributed to Mr. Tibbels' conviction. Any prosecutorial misconduct, if present, was harmless and does not require reversal.

### III. Trial Court's Illustration of Reasonable Doubt

¶ 23 Mr. Tibbels next contends that the trial court's illustration of reasonable doubt during voir dire impermissibly lowered the prosecutor's burden of proof below beyond a reasonable doubt and requires reversal. Although we conclude that reversal is not required in this case, we strongly discourage the use of illustrations like this because they run the risk of confusing jurors, lowering the

prosecution's burden of proof, and diminishing the presumption of innocence. *People v. Flynn*, 2019 COA 105, ¶ 42. Trial courts should limit themselves to the suggested introductory remarks in the model jury instructions, which explain the standard definitions of the relevant legal principles, including reasonable doubt. *See* COLJI-Crim. B:01 (2018).

### A. Additional Facts

¶ 24 During voir dire, the trial court explained that the burden of proof in a criminal case was on the prosecution to prove "to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged." It then read the definition of reasonable doubt from COLJI-Crim. E:03 (2018):

> THE COURT: Now reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence or the lack of evidence in the case. It is a doubt which is not a vague, speculative, or imaginary doubt but such doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

¶ 25 Next, the court said, "I'll give you an example and see if we can put some teeth [into the definition] and make this concrete."

11

Following this statement, it engaged in a colloquy with a juror about

the meaning of reasonable doubt:

> THE COURT: So you and your spouse and your children are in a market to by [sic] a house, okay. . . . And you come upon that ranch and it's just like the dream come true, okay. The price is right. Interest rates are still good. It's in the location that you want. The schools are good. The neighborhood is wonderful, it's perfect. . . . [O]ne Saturday morning you go out to the property. . . . And you descend the flight of stairs down to the basement and as you get to the bottom of the basement steps you see a crack in the foundation from the floor to the ceiling. And it's not that superficial cracking that concrete will do. And structurally it's significant. Are you going to buy that house?
>
> JUROR: No.
>
> THE COURT: Why?
>
> JUROR: Because I don't want a house that has a bad foundation.
>
> THE COURT: Okay. You've got a reason. And it's this crack that is structurally significant. And that's causing you to hesitate, causing you to pause with going forward with a home purchase. This is my example of reasonable doubt. Now the lawyers do a better job, all right. But does that kind of put some – you can kind of touch and feel what reasonable doubt is.

¶ 26    Later, in a colloquy with a different juror, the court said:

THE COURT: But, you know, the reason I bring it up is this proof beyond a reasonable doubt is the highest burden of proof known in the American justice system.

. . . .

Here, it's even higher than that [clear and convincing evidence]. It's proof beyond a reasonable doubt. And it's that example that I gave you, what a reasonable doubt is. So that's the burden that the government has to surmount to prove this case beyond a reasonable doubt. . . .

¶ 27    Defense counsel did not object. Neither party mentioned the court's illustration in opening statements or closing arguments. Nor did the jury ask any questions during deliberations about the meaning of reasonable doubt.

B.    Standard of Review and Applicable Law

¶ 28    The parties agree that this alleged error was not preserved, but they dispute the proper standard of reversal if we find an error. The People ask us to review for plain error and argue that reversal is required only if we conclude that the error was obvious and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. For his part, Mr. Tibbels, argues that any error that lowers the prosecution's

13

burden of proof permeates the trial itself and constitutes structural error requiring automatic reversal.

¶ 29     Based on our supreme court's recent holding in *Johnson*, ¶ 8, we agree with Mr. Tibbels, and conclude that "[a]n instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Id.* (citing *Sullivan*, 508 U.S. at 281-82).

¶ 30     But did the trial court's illustration lower the prosecution's burden of proof?  We do not think so.

¶ 31     Whether an instruction from the court accurately states the law is a legal question that we review de novo.  *Id.*  We review a court's decision to provide a particular instruction for an abuse of discretion.  *People v. Sandoval*, 2018 COA 63, ¶ 11; *see People v. Estes*, 2012 COA 41, ¶ 10 (noting trial court's "wide discretion in conducting a trial," but cautioning the trial court must also exercise restraint to maintain an impartial forum (citing *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997))).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or contrary to law.  *Sandoval*, ¶ 26; *People v. Gwinn*, 2018 COA 130, ¶ 31 ("[A]

court abuses its discretion if it bases its ruling on an erroneous view of the law.").

¶ 32    To determine whether a court's illustration lowered the prosecution's burden of proof, in violation of a defendant's due process rights, and thus constitutes error, we consider the illustration's nature, scope, and timing. *See Johnson,* ¶ 18 ("We note that the trial court provided the instruction to the jury verbally and only once. It was not mentioned or referenced again throughout the entirety of the proceedings, including closing arguments."). We also consider the court's other instructions to the jury. "[I]f the trial court properly instructed the jury on the law — even with 'objectionable language . . . [in] the trial court's elaboration of the reasonable doubt instruction' — then there is no violation of due process." *Id.* at ¶ 14 (quoting *People v. Sherman,* 45 P.3d 774, 779 (Colo. App. 2001)); *Griego v. People,* 19 P.3d 1, 7 (Colo. 2001) (reasoning that a jury can only fulfill its constitutional

role of finding each element beyond a reasonable doubt when it has been properly instructed).[1]

¶ 33    Because the prosecution has the burden of proving every charge beyond a reasonable doubt, any instruction on reasonable doubt that lowers this burden of proof violates a defendant's constitutional right to due process. *People v. Garcia*, 113 P.3d 775, 784 (Colo. 2005). As noted by our supreme court, the United States Supreme Court "has cautioned that further attempts by courts or parties to define 'reasonable doubt' do not provide clarity." *Johnson*, ¶ 13 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)); *see also Miles v. United States*, 103 U.S. 304, 312 (1880) ("Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury. . . ."). As

---

[1] Although characterizing any error as "structural," *Johnson* uses factors — nature, scope, timing, and the other instructions — that closely resemble the constitutional harmless error prejudice analysis (whether there is a reasonable possibility that the error might have contributed to the conviction) to determine whether an error occurred. *See Hagos v. People*, 2012 CO 63, ¶ 11. Although this rubric is somewhat confusing, we are bound by *Johnson*, so we consider these factors in deciding whether the court's illustration constituted error. *See People v. Wise*, 2014 COA 83, ¶ 8 (Colorado Court of Appeals is bound by Colorado Supreme Court precedent).

well, at least twenty-two decisions of this court, both published and unpublished, have repeatedly discouraged trial courts' use of illustrations to explain reasonable doubt, the presumption of innocence, and other legal concepts. *See* Appendix.

¶ 34 At oral argument, both sides acknowledged that illustrations, like the one used here, are problematic. Indeed, the risk of lessening the burden of proof increases when analogies to everyday experiences are used to explain the concept of reasonable doubt:

> [D]ecisions we make in the most important affairs of our lives — choosing a spouse, a job, a place to live, and the like — generally involve a very heavy element of uncertainty and risk-taking. They are wholly unlike the decisions jurors ought to make in criminal cases.

*Victor v. Nebraska*, 511 U.S. 1, 24 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) (citation omitted). As noted by our supreme court, "[t]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." *Johnson*, ¶ 13 (quoting *Victor*, 511 U.S. at 22).

C. Analysis

¶ 35 To begin, we acknowledge the possibility that the jury might have viewed the concept of reasonable doubt through the lens of the

17

court's "substantial crack" illustration. Still, although that possibility exists every time a trial court explains a legal concept in everyday terms, it is not dispositive. We are not aware of any authority that categorically precludes such explanations. Instead, applying the *Johnson* factors, we conclude that the substantial crack illustration did not lower the prosecution's burden of proof for four reasons.

¶ 36 First, the trial judge characterized the illustration as his "example" and said the lawyers would do a better job of explaining reasonable doubt. Thus, in our view, the illustration was unlike a formal instruction of law. *See People v. Boyd*, 2015 COA 109, ¶ 12 (opining that the court's comments during voir dire were not an instruction), *aff'd*, 2017 CO 2; *see also Wansing v. Hargett*, 341 F.3d 1207, 1215 (10th Cir. 2003) (finding that a trial court's contemporaneous remarks are different from formal instructions, though both can be considered in determining whether the jury was likely to convict based on an improper standard).

¶ 37 Second, as in *Johnson*, the court's illustration was limited to voir dire. Neither the trial court nor the parties mentioned it again after the jury was selected. *Cf. People v. Munoz*, 240 P.3d 311, 316

(Colo. App. 2009) (instructional language must be examined in context and cannot be "sequestered from its surroundings" in determining its impact).

¶ 38    Third, the court told the jury:

> At the conclusion of the evidence I will tell you the rules of law which you are to use in reaching your verdict.  I'll read those rules of law to you aloud and you will have copies of them to take back to the jury deliberation room to use.

In our view, this remark and the fact that the court never gave the illustration to the jury in writing, supports the court's characterization of the illustration as an example rather than an instruction of law.

¶ 39    Finally, before providing the illustration, and at the close of the evidence, the court properly instructed the jury on reasonable doubt in accordance with the Model Jury Instructions, both verbally and in writing.  *Johnson*, ¶¶ 16-18; *see also People v. Van Meter*, 2018 COA 13, ¶ 33 (considering an improper analogy's brief and isolated use followed by a correct jury instruction on reasonable doubt in deciding whether plain error occurred).  And, the jury never indicated any confusion about its meaning.  We presume that

the jury understood and followed the court's instructions. *Johnson,* ¶ 14.

¶ 40 Accordingly, while we strongly discourage trial courts' use of everyday illustrations to explain reasonable doubt, as in *Johnson,* we conclude that the trial court's illustration here did not impermissibly lower the prosecution's burden of proof and does not require reversal.

## IV. Dangerous Instrument Finding

¶ 41 Mr. Tibbels last contends that his class 4 felony conviction should be vacated because the court erroneously failed to give a special interrogatory requiring the jury to find that he possessed a "dangerous instrument." He reasons that because the model jury instructions recommend giving this interrogatory, its absence requires us to modify his conviction to a class 6 felony. While we agree with Mr. Tibbels that the better practice is to provide the special interrogatory requiring a dangerous instrument finding, we nevertheless conclude that the circumstances of this case show that the jury made this finding beyond a reasonable doubt.

## A.    Standard of Review

¶ 42    We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *People v. Sandoval*, 2018 COA 156, ¶ 11.  However, we review a trial court's ruling on a particular jury instruction for an abuse of discretion.  *Id.*  Where, as here, the defendant does not object to the jury instructions, we review for plain error.  *People v. Smith*, 2018 CO 33, ¶ 22.  To constitute plain error, the error must be both "obvious and substantial."  *Hagos*, ¶ 14.

¶ 43    To meet these two requirements, an error must be so clear-cut that a trial judge should have been able to avoid it without the benefit of an objection, *People v. Pollard*, 2013 COA 31M, ¶ 39, and it must be "seriously prejudicial," which means it must have so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the defendant's conviction, *People v. Ujaama*, 2012 COA 36, ¶ 43; *see also Hagos*, ¶ 14.

## B.    Possession of Contraband

¶ 44    Section 18-8-204.1, C.R.S. 2019, provides as follows:

> (1) A person being confined in a detention facility commits the crime of possession of contraband in the first degree if he knowingly

21

obtains or has in his possession contraband as listed in section 18-8-203(1)(a) or alcohol . . . . (2) Possession of contraband in the first degree, other than a dangerous instrument, is a class 6 felony. (3) Possession of contraband in the first degree involving a dangerous instrument is a class 4 felony.

¶ 45 Section 18-8-203(1)(a), C.R.S. 2019, defines "contraband" as

a dangerous instrument; malt, vinous, or spiritous liquor, . . . fermented malt beverage, . . . controlled substance, . . . or marijuana or marijuana concentrate . . . .

¶ 46 Subsection (4) of that statute defines a "dangerous instrument" as

a firearm, explosive device or substance (including ammunition), knife or sharpened instrument, poison, acid, bludgeon, or projective device, or any other device, instrument, material, or substance which is readily capable of causing or inducing fear of death or bodily injury, the use of which is not specifically authorized.

¶ 47 The model jury instruction for "Possession of Contraband in the First Degree," COLJI-Crim. 8-2:09 (2018), follows the statutory elements and requires the jury to find, as relevant here, that the defendant possessed "contraband or alcohol." When the contraband alleged is a dangerous instrument, the model jury

instructions recommend including a special interrogatory, COLJI-Crim. 8-2:10.INT (2018), which requires the jury to answer "Yes" or "No" to the question, "Was the contraband a dangerous instrument?" and then defines a dangerous instrument in accordance with section 18-3-203(4).

## C.    Analysis

¶ 48    The trial court instructed the jury on possession of contraband as follows:

> 1. That the defendant,
> 2. in the State of Colorado, at or about the date and place charged
> 3. while confined in a detention facility
> 4. knowingly
> 5. obtained or had in his possession contraband.

¶ 49    In a separate instruction, the court defined "contraband" as only a "dangerous instrument," and it excluded the other potential items identified as contraband in section 18-3-203(1)(a).  The court defined "dangerous instrument" as set forth in section 18-8-203(4).

¶ 50    We discern no plain error in the court's omission of the special interrogatory.  By limiting the definition of contraband to a dangerous instrument, and by defining dangerous instrument consistently with the statute, the court ensured that the jury

23

unanimously found that the "contraband" element was a dangerous instrument, thereby obviating the need for the special interrogatory.

¶ 51    To the extent Mr. Tibbels argues that the model jury instructions *require* a special interrogatory in all cases, we disagree, because it is well settled that the model instructions are not binding on a trial court and are intended to provide guidance. *See People v. Hoskin*, 2016 CO 63, ¶ 20 ("[T]he pattern jury instructions are not law, not authoritative, and not binding on this court.") (citation omitted).

¶ 52    We are also not persuaded by Mr. Tibbels' assertion that his acquittal of the other charges requires a different result. He reasons that because the acquitted charges included the elements of dangerous instrument (introduction of contraband) and deadly weapon (menacing), the jury necessarily did not find that he possessed a dangerous instrument. But he cites no authority for this proposition, and the evidence refutes this reasoning. Mr. Tibbels urged the jury to acquit him on the basis that he did not know he had tools in his pocket when he was arrested. Indeed, he was uncooperative with the deputies during the booking process and could not be thoroughly searched. On this evidence, the jury

could find that he did not knowingly introduce contraband. But no one disputed that after being in the quiet room for several hours, Mr. Tibbels discovered the tools in his pocket and used one of them to damage the cell door. On this evidence, the jury could find knowing possession.

¶ 53   Likewise, Mr. Tibbels urged the jury to acquit him of menacing because he did not direct his comments at a particular deputy and ultimately cooperated with the deputies' commands, an argument with which the jury agreed.

¶ 54   Because the jury instructions properly tracked the statutory language and required the jury to find the elements of class 4 possession of contraband beyond a reasonable doubt, and because we presume the jury understood and followed those instructions, we discern no error, let alone plain error. *See Bass*, 155 P.3d at 552.

## V.   Conclusion

¶ 55   The judgment is affirmed.

JUDGE TAUBMAN concurs.

JUDGE PAWAR dissents.

JUDGE PAWAR, dissenting.

¶ 56    I respectfully dissent because I disagree with Part III of the

majority opinion.  In my view, it is reasonably likely that the trial

court's illustration of what constitutes reasonable doubt lowered

the prosecution's burden of proof.  I would therefore conclude that

this illustration was structural error and reverse Tibbels'

conviction.[1]  Because I would reverse, I would not address Tibbels'

remaining contentions.

## I.    Crack-in-the-Foundation Illustration

¶ 57    During voir dire, the trial court gave an example of a situation

in which reasonable doubt exists.  The court asked a juror to

imagine that a potential homebuyer had found what she thought

---

[1] The majority correctly states that we review whether the instructions accurately informed the jury of the law de novo.  *People v. Carter,* 2015 COA 24M-2, ¶ 39.  It also states that we review a court's decision to provide a particular instruction for abuse of discretion.  *Id.*  The error here is not one I would review for abuse of discretion.  Tibbels' allegation of error is that the court's instructions lowered the prosecution's burden of proof.  And trial courts have no discretion to instruct the jury in a manner that misstates the law by lowering the prosecution's burden of proof.  *Id.* ("The trial court has broad discretion to formulate jury instructions *as long as they are correct statements of the law*.") (emphasis added) (citation omitted).

was her dream home. Imagine the homebuyer walking into the basement, the trial court said, and discovering a "structurally significant," "floor to the ceiling" crack in the basement wall and foundation. This, according to the trial court, would cause the homebuyer to have a reasonable doubt about buying the home.

¶ 58 In my view, this illustration set too high a bar for what constitutes reasonable doubt. And because the jury was instructed to convict if it had no reasonable doubts about Tibbels' guilt, the illustration lowered the prosecution's burden of proof.

## II. The Majority's Reasoning

¶ 59 The majority reaches a contrary conclusion, but not because it believes that the crack-in-the-foundation illustration properly describes reasonable doubt. In fact, just the opposite. The majority seems to agree that, had the jury considered and applied the trial court's crack-in-the-foundation illustration, structural error would have occurred. Indeed, the majority's explanation for why there was no structural error has nothing to do with the crack-in-the-foundation illustration accurately describing reasonable doubt. Instead, the majority's entire explanation for why there was no structural error is that other factors purportedly mitigated the

illustration's effect on the jury.  As I understand the majority's reasoning, it finds no structural error because, based on the isolated and informal nature of the illustration and the proper reasonable doubt instructions, the jury *must have ignored and not considered or applied* the crack-in-the-foundation illustration. Unlike the majority, I see nothing in the record supporting the conclusion that the jury did not apply the trial court's illustration.

### III.    Nothing Mitigated the Trial Court's Illustration

¶ 60    For three reasons, I would conclude that nothing mitigated the damage done by the trial court's erroneous illustration of reasonable doubt.  First, at no point did the trial court tell the jury to disregard, ignore, or otherwise not apply the crack-in-the-foundation illustration.

¶ 61    Second, nothing about the court's proper reasonable doubt instructions suggested to the jury that it should not apply the court's improper illustration.  The illustration was presented as a concrete example of how to apply the abstract legal concepts articulated in the proper instructions.  Consequently, from the jury's perspective, it did not have to choose between the instruction

28

or the illustration; the illustration, to a member of the jury, was a more precise articulation of what constitutes reasonable doubt.

¶ 62    The instructions properly informed the jury that reasonable doubt is based on reason and common sense; is not vague, speculative, or imaginary; and is doubt that would cause reasonable people to hesitate to act in matters of importance to themselves.  These are abstract explanations of reasonable doubt. They could mean different things to different people.  The crack-in-the-foundation illustration did not contradict these abstract concepts — it more specifically and precisely defined them.  It told the jury how to apply these abstract concepts in a real-life situation.  The illustration more precisely explained what it means to have a doubt that is not vague, speculative, or imaginary, and causes a reasonable person to hesitate to act.[2]  Consequently, nothing about giving the jury the proper instructions suggested that

---

[2] Indeed, the trial court prefaced its illustration by reading the proper, abstract definition of reasonable doubt.  Addressing the jury, the court then stated, "Now, you're all sitting there saying what the hell does that mean.  It's a lengthy definition, okay.  And don't lose heart.  I'll give you an example and see if we can put some teeth and make this concrete."  The court then explained the crack-in-the-foundation illustration.

the jury did not also apply the court's improper illustration. And applying the illustration to more precisely define the abstract concepts in the reasonable doubt instruction lowered the prosecution's burden of proof. Again, the majority does not dispute that the illustration, if applied, would have had this effect. The majority only disagrees that the jury actually applied the illustration.

¶ 63 This is not a case in which the subsequent proper instructions corrected the court's inaccurate illustration of what constitutes reasonable doubt. As mentioned above, at no point did the trial court instruct the jury to disregard the illustration. The jury therefore could, and likely did, apply the illustration and instructions together, thereby lowering the prosecution's burden of proof.

¶ 64 Third, I attach little importance to the fact that the court's illustration was not technically a formal instruction; it was an uncontradicted explanation of reasonable doubt from the judge, the one person in the courtroom whose words everyone, including the jury, must heed.

¶ 65    It is true that the jurors heard the illustration during voir dire, during the court's colloquy with a single juror.  But, as discussed above, this was the only instance in which the court gave a specific example of what constitutes reasonable doubt.  And this illustration did not come from one of the lawyers; it came from the judge.  I find it unlikely that the jury would have, without direction, understood that the court's illustration was not a formal instruction.  I find it even less likely that the jury, without direction, would have ignored and not applied the illustration because it was not a formal instruction.  Instead, I think it far more likely that the jury took note of and remembered the only time the court explained, in familiar and accessible terms, what constitutes reasonable doubt.  And when the jury received the proper reasonable doubt instructions in written form at the end of the case, I think it reasonably likely that the jury thought back to the court's crack-in-the-foundation illustration and used it to determine whether it had reasonable doubts about Tibbels' guilt.

¶ 66    Divisions of this court routinely rely on the presumption that the jury followed the trial court's instructions.  *See, e.g., People v. Hardman*, 2012 COA 89, ¶ 61.  And we apply this presumption not

only to formal written instructions, but oral instructions given only once during a trial. *Id.* I see no reason why the same presumption would not apply to the trial court's crack-in-the-foundation illustration here, especially where nothing in the record suggested to the jury that it should not apply the illustration.

¶ 67    I am aware that other divisions of this court have held, like the majority here, that a trial court's illustration of reasonable doubt that goes beyond the model instructions does not constitute structural error where the illustration occurs during voir dire, the illustration is not referred to again, and proper reasonable doubt instructions are given. *See People v. Avila*, 2019 COA 145, ¶¶ 46-48; *People v. Flynn*, 2019 COA 105, ¶ 49. But, neither *Avila* nor *Flynn* explicitly held, as I would here, that the illustration at issue would have lowered the prosecution's burden of proof if the jury applied it. Second, even if they had, I would disagree with the conclusion that any of the facts mentioned in those cases mitigated the harm of an illustration that, if applied, would have lowered the prosecution's burden of proof.

## IV.  *Johnson* and *Deleon*

¶ 68     Finally, I see nothing in *Johnson v. People*, 2019 CO 17, or *Deleon v. People*, 2019 CO 85, that compels a different conclusion.

¶ 69     In *Johnson*, the supreme court was very clear that the trial court's "extraneous 'hesitate to act instruction'" did not lower the prosecution's burden of proof "for two reasons: (1) the trial court gave proper instructions defining proof beyond a reasonable doubt and the prosecution's burden both before the extraneous instruction and at the close of evidence; and (2) the 'hesitate to act' instruction was too nonsensical to be understood by the jury." *Johnson*, ¶ 15.  In other words, the jury could not have possibly applied the hesitate to act instruction because it was impossible to understand.  *Id.* at ¶ 18 ("[I]t bears repeating that the instruction is nonsensical and simply too confusing for the jury to follow.").  And because the instruction was impossible to apply, there was no chance that it lowered the prosecution's burden of proof.

¶ 70     Our case is different.  As explained above, the trial court's improper reasonable doubt illustration made sense and was in fact *easier* to understand and apply than the generic and abstract, yet proper, reasonable doubt instruction.  Therefore, unlike the

unintelligible instruction in *Johnson,* it is reasonably likely that the court's clear crack-in-the-foundation illustration in this case lowered the prosecution's burden of proof.

¶ 71     *Deleon* is not a reasonable doubt instruction case.  In *Deleon,* the trial court neglected to give the jury a formal written instruction explaining that it was to draw no adverse inference from the defendant's decision not to testify.  *Deleon,* ¶ 7.  The only time the trial court mentioned the defendant's right not to testify was during voir dire, when the court explained that the defendant had "no obligation to present any evidence or testimony at all" and "if he chooses not to testify, you cannot hold it against him in any way that he did not."  *Id.* at ¶ 26.

¶ 72     The question before the supreme court was whether the trial court's comments during voir dire constituted an "effective" no-adverse-inference instruction.  *Id.* at ¶ 25.  The supreme court held that the mere fact that the comments came during voir dire was not dispositive.  *Id.* at ¶ 26.  Instead, the court held that the voir dire comments were not an effective instruction "based on both their timing and their content."  *Id.*

¶ 73    I do not read *Deleon* to stand for the proposition that a trial

court's comments during voir dire are presumed to have no impact

on the jury.  Instead, I understand *Deleon* to mean that the trial

court's comments during voir dire in that case might have had an

impact on the jury, but that impact was not substantial enough to

constitute an effective no-adverse-inference instruction.  *Id.* at ¶ 26

("Although the timing [of the instruction] is not dispositive, it would

have been most effective for the trial court to provide an instruction

at that time," i.e., "immediately prior to closing arguments."

(quoting *People v. Baenziger*, 97 P.3d 271, 274 (Colo. App. 2004))).

¶ 74    Here, we are not faced with the question of whether the trial

court's illustration during voir dire was impactful enough to rise to

the level of a proper instruction.  Instead, our question is whether

the illustration during voir dire was impactful enough to lower the

prosecution's burden of proof, however marginally.  As explained

above, I conclude that it did.

## V.    Conclusion

¶ 75    In sum, I would conclude (and the majority apparently agrees)

that, in general, defining reasonable doubt using the crack-in-the-

foundation illustration is improper because it lowers the

prosecution's burden of proof. The majority holds that the trial court's use of that illustration in this case did not lower the prosecution's burden of proof because it is unlikely that the jurors considered and applied the illustration. I respectfully disagree because (1) the trial court did not tell the jury to ignore the illustration; (2) the illustration was not only fully compatible with the formal reasonable doubt instructions, it was a more accessible and easily understood illustration of reasonable doubt; and (3) the illustration came from the judge, whose instructions — formal or otherwise — we must presume the jury followed. I would therefore conclude that the court's illustration lowered the prosecution's burden of proof, constituted structural error, and requires reversal of Tibbels' convictions.

APPENDIX

The following cases have discouraged the use of everyday examples to explain abstract legal concepts. As of November 17, 2019, we found seven published cases and sixteen unpublished cases discouraging trial courts from using such analogies although they have not necessarily warranted reversal.

1.  *People v. Avila*, 2019 COA 145, ¶¶ 41-48 (affirming judgment where the court distinguished beyond a reasonable doubt from beyond a shadow of a doubt using a house with cracks in the foundation or missing pieces analogy);

2.  *People v. Flynn*, 2019 COA 105, ¶ 37 (affirming judgment where court analogized reasonable doubt to foundational cracks and birth certificate validity);

3.  *People v. Boyd*, 2015 COA 109, ¶ 7 (affirming judgment where court explained presumption of innocence did not mean the defendant was innocent, but the presumption was that he was not guilty and reversing on other grounds), *aff'd*, 2017 CO 2;

4.  *People v. Baca,* 2015 COA 153, ¶ 9 (affirming judgment where court analogized reasonable doubt to an individual's decision to drive a motor vehicle);

5.  *People v. Carter,* 2015 COA 24M-2, ¶ 54 (affirming judgment where court analogized reasonable doubt to a jigsaw puzzle missing some of the pieces and remanding on other grounds to correct mittimus);

6.  *People v. Estes,* 2012 COA 41, ¶¶ 6-7 (affirming judgment where court analogized burden of proof to a customer without a gas receipt who is mistakenly reported for theft);

7.  *People v. Sherman,* 45 P.3d 774, 777 (Colo. App. 2001) (affirming judgment but noting the trial court defining reasonable doubt as "*a doubt for which you could give a reason. It's a rational, objective statement of why you feel that something hasn't been proven, or why you have a doubt*" was error) (emphasis added).

8.  *People v. Reyes,* slip op. at ¶ 8 (Colo. App. No. 18CA0526, Nov. 7, 2019) (not published pursuant to C.A.R. 35(e))

(affirming judgment where court analogized reasonable doubt to buying a used car).

9. *People v. Tafoya*, slip op. at ¶ 40 (Colo. App. No. 17CA0910, Apr. 4, 2019) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to entering an intersection on a green light);

10. *People v. King*, slip op. at ¶ 42 (Colo. App. No. 16CA1133, Mar. 14, 2019) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to a substantial crack in a house's foundation);

11. *People v. Taylor*, slip op. at ¶ 15 (Colo. App. No. 16CA1683, Mar. 14, 2019) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to "life decisions" such as staying in school, choosing a college major, buying a home, and getting married);

12. *People in Interest of J.N.S.*, slip op. at ¶¶ 5-6 (Colo. App. No. 16CA0196, June 7, 2018) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized

39

reasonable doubt to an engine malfunction or pilots drinking heavily at the airport before boarding a commercial flight);

13. *People v. Suarez,* slip op. at ¶ 18 (Colo. App. No. 15CA0617, Apr. 5, 2018) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to everyday concerns like earthquakes and driving);

14. *People v. Lucero,* slip op. at ¶¶ 7-8 (Colo. App. No. 14CA1842, Mar. 22, 2018) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to disciplining a child);

15. *People v. Otto,* slip op. at ¶ 41 (Colo. App. No. 14CA1328, Mar. 15, 2018) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to everyday decision-making like anticipating an earthquake, driving a car, or flying on a commercial airliner);

16. *People v. Sanchez,* slip op. at ¶ 18 (Colo. App. No. 14CA1170, Jan. 11, 2018) (not published pursuant to

C.A.R. 35(e)) (affirming judgment where trial court asked jurors to rely on the same skills they use when driving a car or picking out meat for their family in applying reasonable doubt and vacating on other grounds);

17. *People v. Essien*, slip op. at ¶ 41 (Colo. App. No. 14CA1375, June 1, 2017) (not published pursuant to C.A.R. 35(e)) (affirming judgment where court analogized reasonable doubt to an incomplete jigsaw puzzle);

18. *People v. Espinoza*, (Colo. App. No. 10CA0686, June 20, 2013) (not published pursuant to C.A.R. 35(f)) (affirming judgment where court analogized reasonable doubt to an incomplete jigsaw puzzle);

19. *People v. Bonilla-Barrera*, (Colo. App. No. 09CA0462, Mar. 1, 2012) (not published pursuant to C.A.R. 35(f)) (affirming judgment where court told the jury the defendant "did something" to be in court, and used a gas station analogy to explain how to determine if defendant broke the law);

20. *People v. Williams*, (Colo. App. No. 09CA0906, Jan. 12, 2012) (not published pursuant to C.A.R. 35(f)) (affirming

judgment where court analogized reasonable doubt and presumption of innocence to a customer without a gas receipt later charged with theft of gas and vacating on other grounds);

21. *People v. Cruz-Avila*, (Colo. App. No. 09CA1957, Dec. 8, 2011) (not published pursuant to C.A.R. 35(f)) (affirming judgment where court analogized gas station theft to reasonable doubt);

22. *People v. Harris*, (Colo. App. 09CA1626, Nov. 3, 2011) (not published pursuant to C.A.R. 35(f)) (affirming judgment where court told jury that the defendant "did something" to be in court and vacating on other grounds); and

23. *People v. Edwards*, (Colo. App. 08CA1764, Aug. 12, 2010) (not published pursuant to C.A.R. 35(f)) (affirming judgment where court said defendant "may have done something," and "if he did something, well, he may not be innocent in the classic sense, but that's not the issue; the issue is whether he committed the crimes" charged).